1  **WEILAND, GOLDEN,**
**SMILEY, WANG EKVALL & STROK, LLP**
2  Evan D. Smiley, State Bar No. 161812
esmiley@wgllp.com
3  Hutchison B. Meltzer, State Bar No. 217166
hmeltzer@wgllp.com
4  Robert S. Marticello, State Bar No. 244256
rmarticello@wgllp.com
5  650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
6  Telephone:    (714) 966-1000
Facsimile:    (714) 966-1002
7
Attorneys for Alfred H. Siegel,
8  Chapter 11 Trustee

9           **UNITED STATES BANKRUPTCY COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA**

11              **SANTA ANA DIVISION**

12  In re                                    | Case No. 8:08-bk-15588-ES

13  LBREP/L-Sun Cal Master I LLC, et al.,    | Chapter 11

14              Debtor.                      | (Jointly Administered with Case Nos.
                                              8:08-bk-15637-ES; 8:08-bk-15639-ES; and
15  _____          8:08-bk-15640-ES)

16  _____ Affects LBREP/L-SunCal Master I   **FIRST AMENDED DISCLOSURE**
             LLC, Only                        **STATEMENT DESCRIBING FIRST**
17  _____ Affects LBREP/L-SunCal McAllister **AMENDED CHAPTER 11 PLAN (DATED**
             Ranch LLC, Only                  **JANUARY 7, 2011)**
18
19  _____ Affects LBREP/L-SunCal            Disclosure Statement Hearing
             McSweeny Farms LLC, Only         DATE:      December 22, 2010
                                              TIME:      2:00 p.m.
20  _____ Affects LBREP/L-SunCal            PLACE:     Courtroom 5A
             Summerwind Ranch LLC, Only                  411 W. Fourth St.
21                                                        Santa Ana, CA 92701
    __X__ Affects All Debtors.
22                                            Plan Confirmation Hearing
23                                            DATE:      April 1, 2011, and April 8, 2011
                                              TIME:      10:00 a.m.
24                                            PLACE:     Courtroom 5A
                                                         411 W. Fourth St.
25                                                        Santa Ana, CA 92701
26
27
28

554618.1

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 1

    A.  The Purpose of This Document .......................................................... 2

    B.  Deadlines for Voting and Objecting; Date of the Plan
        Confirmation Hearing ......................................................................... 3

        1.  Time and Place of the Confirmation Hearing .............................. 4

        2.  Deadline for Voting for or Against the Plan ................................ 4

        3.  Deadline for Objecting to the Confirmation of the Plan .............. 4

        4.  Identity of Person to Contact for More Information
            Regarding the Plan ................................................................... 4

    C.  Disclaimer ........................................................................................ 4

II. BACKGROUND ......................................................................................... 5

    A.  Description and History of the Debtors' Business ............................... 5

    B.  Principals/Affiliates of the Debtors' Business ..................................... 6

    C.  Management of the Debtors Before and After Bankruptcy .................. 7

    D.  Events Leading to Chapter 11 Filing ................................................. 7

        1.  The January 2006 Loans ........................................................... 7

        2.  The February 2007 Loan ........................................................... 8

        3.  The Intercreditor Agreement ..................................................... 9

        4.  The Debtors' Alleged Defaults Under the Lien Credit
            Agreements ............................................................................ 10

    E.  Significant Events During the Bankruptcy Cases ............................. 10

        1.  The Lehman Bankruptcy Cases ............................................... 10

        2.  Bankruptcy Proceedings ......................................................... 11

            a.  The Appointment of the Trustee and the Order for
                Relief ............................................................................. 11

            b.  The LCPI Stay Relief Motions ......................................... 11

            c.  The Settlement with LCPI and the 1st Lien
                Lenders ......................................................................... 12

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## TABLE OF CONTENTS (cont.)

Page

   (1) The Original Term Sheet ............................................. 12

   (2) The Amended Term Sheet ......................................... 13

  d. Cash Collateral and the Management of the Properties ............................................................... 18

  e. The Trustee's Stay Relief Motion ................................ 20

  f. The Yucaipa Settlement ............................................. 21

  g. The McSweeny Farm Lease ....................................... 22

  h. The Gramercy Loan .................................................... 22

  i. Abandonment of Membership Interests in Patterson Ranch ........................................................ 23

  j. Appointment of Committee ......................................... 23

  k. The Employment of Estate Professionals .................... 24

  l. The Claims Bar Date .................................................. 26

  m. The Debtors' Schedules, Interim Statements, and Operating Reports ................................................... 26

 3. Other Legal Proceedings .................................................... 26

  a. The Superior Pipelines Action .................................... 27

  b. The Gramercy Action ................................................. 28

  c. The Hemet Manufacturing and Pacific States Engineering Actions ................................................. 29

 4. Actual and Projected Recovery Avoidance Actions and Causes of Action ......................................................... 30

  a. Causes of Action Against the Lien Lenders .................. 30

  b. Causes of Action Against Lehman Lakeside and SunCal ................................................................... 31

  c. Other Potential Avoidance Actions ............................. 32

 5. Procedures Implemented to Resolve Financial Problems ............. 32

 6. Current and Historical Financial Conditions .................................. 34

III. SUMMARY OF THE PLAN .......................................................... 35

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# TABLE OF CONTENTS (cont.)

**Page**

A.  The Plan is a Liquidating Plan ......................................................................... 35

B.  The Plan Treats Claims Against All Estates ............................................... 35

C.  What Creditors and Interest Holders Will Receive Under the
    Proposed Plan ........................................................................................... 36

D.  Unclassified Claims ..................................................................................... 37

    1.  Administrative Expenses ..................................................................... 37

        a.  Ordinary Course Administrative Claims ................................. 39

        b.  Non-Ordinary-Course Administrative Claims ....................... 40

        c.  Professional-Fee Claims ......................................................... 40

    2.  Priority Tax Claims ............................................................................. 41

E.  Classified Claims ......................................................................................... 42

    1.  Summary of Classes ........................................................................... 42

    2.  Secured Claims ................................................................................... 42

        a.  Secured Claim of the 1st Lien Lenders ................................ 42

        b.  Secured Claims Other Than the Secured Claim
            of the 1st Lien Lenders ....................................................... 46

    3.  Classes of Priority Unsecured Claims ............................................ 49

    4.  Classes of Unsecured Claims .......................................................... 50

        a.  Unsecured Deficiency Claim of the 1st Lien
            Lenders ..................................................................................... 50

        b.  Unsecured Claims Other Than the Unsecured
            Deficiency Claim of the 1st Lien Lenders ........................ 52

    5.  Class of Interest Holders ................................................................... 54

F.  Means of Effectuating the Plan .................................................................. 55

    1.  The Sale of the Properties ................................................................ 55

        a.  The Auction ............................................................................. 55

        b.  The Transfer of Title ............................................................... 56

        c.  The Surety Bonds ................................................................... 56

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## TABLE OF CONTENTS (cont.)

Page

2.    The Funding of the Plan ........................................................... 56

G.    Transfer of Estate Assets ............................................................. 57

H.    Dissolution of the Debtors ............................................................ 57

I.    Liquidating Trust ....................................................................... 57

1.    Establishment of the Liquidating Trust ............................... 57

2.    Trust Distributions ............................................................ 58

3.    Duration of the Trust......................................................... 58

4.    Liquidation of Avoidance Actions and Actions.................... 58

5.    Liquidating Trustee ........................................................... 59

a.    Appointment ........................................................... 59

b.    Term ...................................................................... 59

c.    Powers and Duties .................................................. 59

d.    Retention of Professionals and Compensation
Procedure............................................................... 61

e.    Fees and Expenses ................................................. 62

f.    Limitation of Liability and Indemnification ............. 62

g.    Liquidating Trustee as Successor........................... 63

h.    Compromising Claims ............................................. 64

i.    Vesting of Assets ................................................... 64

6.    Liquidating Trustee as Disbursing Agent............................ 64

7.    Bond................................................................................. 64

8.    Federal Income and Taxation of the Liquidating Trust ................. 64

9.    Beneficiaries..................................................................... 65

J.    Release of Liens ......................................................................... 66

K.    Risk Factors .............................................................................. 66

L.    Provisions Governing Distributions ............................................. 67

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 550
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# TABLE OF CONTENTS (cont.)

**Page**

1.   Dates of Distributions ................................................................. 67

2.   Manner of Distribution ............................................................... 67

3.   Delivery of Distributions in General ........................................... 67

4.   Rounding of Payments ............................................................... 68

5.   Interest on Claims ..................................................................... 68

6.   Compliance with Tax Requirements............................................ 68

7.   De Minimis Distributions ........................................................... 69

8.   Setoffs ...................................................................................... 70

9.   Limitation on Liability ................................................................ 70

M.   Other Provisions of the Plan ............................................................. 70

1.   Claim Objections and Disputed Claims ...................................... 70

    a.   Standing ......................................................................... 71

    b.   Claims Objection Deadline ............................................. 71

    c.   No Distribution Pending Allowance.................................. 71

    d.   Reserves for Disputed Claims ........................................ 71

2.   Mechanic's Liens....................................................................... 72

3.   Executory Contracts and Unexpired Leases ............................... 73

    a.   Assumption and Assignment .......................................... 73

    b.   Rejections...................................................................... 76

4.   Changes in Rates Subject to Regulatory Commission
     Approval................................................................................... 77

5.   Preservation of Causes of Action and Avoidance
     Actions ..................................................................................... 77

6.   Retention of Jurisdiction ............................................................ 78

7.   Tax Consequences of the Plan ................................................... 80

8.   Exemption from Transfer Taxes ................................................. 81

IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES ................................. 81

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## TABLE OF CONTENTS (cont.)

Page

A.   Who May Vote or Object ....................................................................... 81

   1.   Who May Object to Confirmation of the Plan ................................ 81

   2.   Who May Vote to Accept/Reject the Plan..................................... 82

      a.   What Is an Allowed Claim/Interest.................................... 82

      b.   What Is an Impaired Claim/Interest .................................. 82

   3.   Who is Not Entitled to Vote .......................................................... 83

   4.   Who Can Vote in More Than One Class ....................................... 84

   5.   Votes Necessary to Confirm the Plan........................................... 84

   6.   Votes Necessary for a Class to Accept the Plan .......................... 84

   7.   Treatment of Nonaccepting Classes ............................................ 84

   8.   Request for Confirmation Despite Nonacceptance by Impaired Classes .......................................................................... 85

B.   Liquidation Analysis ............................................................................ 85

C.   Feasibility ............................................................................................ 88

V.   EFFECT OF CONFIRMATION ...................................................................... 89

A.   Discharge............................................................................................. 89

B.   Revesting of the Assets ....................................................................... 89

C.   Dissolution of the Committee ............................................................... 89

D.   Exculpation and Releases ................................................................... 89

E.   Modification of the Plan........................................................................ 90

F.   Post-Confirmation Status Report ......................................................... 90

G.   Quarterly Fees ..................................................................................... 90

H.   Post-Confirmation Conversion/Dismissal ............................................ 91

I.   Final Decree......................................................................................... 91

TABLE OF DEFINITIONS ...................................................................................... 92

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    Alfred H. Siegel (the "Trustee"), the chapter 11 trustee of the jointly administered

2  estates of LBREP/L-SunCal Master I LLC (the "Parent Debtor"), and LBREP/L-SunCal

3  McAllister Ranch LLC, LBREP/L-SunCal McSweeny Farms LLC, and LBREP/L-SunCal

4  Summerwind Ranch LLC (collectively, the "Subsidiary Debtors," and together with the

5  Parent Debtor, the "Debtors"), provides this *First Amended Disclosure Statement*

6  *Describing First Amended Chapter 11 Plan* (the "Disclosure Statement") to creditors,

7  pursuant to § 1125 of the Bankruptcy Code, in connection with the solicitation of

8  acceptances of his First Amended Chapter 11 Plan (the "Plan") filed with the United

9  States Bankruptcy Court for the Central District of California (the "Court") in the above-

10  captioned chapter 11 bankruptcy cases (collectively, the "Cases") on October 27, 2010.

11  **I.    INTRODUCTION**

12    The Cases were commenced by the filing of involuntary chapter 11 petitions under

13  the United States Bankruptcy Code (the "Bankruptcy Code" or "Code"), 11 U.S.C. §§ 101

14  *et seq.*, on or about September 10 and 11, 2008 (the "Petition Dates"). The Cases are

15  being jointly administered pursuant to an order of this Court entered on November 13,

16  2008. On or about October 30, 2008, the Court entered an order approving the Trustee's

17  appointment as the chapter 11 trustee of the Cases.

18    Chapter 11 allows debtors, and, under some circumstances, creditors and others

19  parties in interest, such as the Trustee, to propose a plan. A plan may provide for a

20  debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate,

21  or a combination of both. The Trustee is the proponent of the Plan, which was sent to you

22  in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE

23  DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

24    The Plan is a liquidating plan. The Plan incorporates the terms of a settlement

25  reached and approved by the Court between the Trustee, the Official Committee of

26  Unsecured Creditors (the "Committee"), and Lehman Commercial Paper Inc. ("LCPI"), in

27  its individual capacity and as administrative agent for the first-position secured lenders

28  (the "1st Lien Lenders"). As described in further detail below, the Trustee intends to

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  accomplish payments under the Plan through the sale of the Subsidiary Debtors' real

2  property development projects and/or the pursuit of Causes of Action[1] held by the

3  Debtors' bankruptcy estates (each, an "Estate" and collectively, the "Estates") against

4  third parties.  The primary source of potential recoveries for creditors under the Plan will

5  be the Estates' Causes of Action.  Moreover, as discussed in further detail below, while

6  the Trustee is not requesting the substantive consolidation of the Estates, any

7  Distributions of Available Cash to General Unsecured Creditors with respect to each of the

8  Estates will be made on a consolidated basis.  The Effective Date of the Plan will be the

9  first Business Day that is fourteen (14) days after the entry of an order confirming the Plan

10  (the "Confirmation Order"), provided there has been no order staying the effectiveness of

11  the Confirmation Order.

12  　　Accompanying this document is a letter from the Committee in support of the Plan

13  and recommending that creditors vote to accept the Plan.

14  　　**A.    The Purpose of This Document**

15  　　This Disclosure Statement summarizes what is in the Plan, and tells you certain

16  information relating to the Plan and the process the Court follows in determining whether

17  or not to confirm the Plan.

18  　　READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW

19  ABOUT:

20  　　1.    WHO CAN VOTE ON OR OBJECT TO THE PLAN;

21  　　2.    WHAT THE TREATMENT OF YOUR CLAIM IS UNDER THE PLAN (*i.e.*,

22  　　　　　what you will receive on account of your claim if the Plan is confirmed), AND

23  　　　　　HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD

24  　　　　　RECEIVE IN LIQUIDATION IN CHAPTER 7;

25

26

27  　　[1]    Any capitalized terms not defined in the text of this Disclosure Statement are defined in the Table of
Definitions found at the end of the Disclosure Statement.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

3.    THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASES;

4.    WHAT THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;

5.    WHAT IS THE EFFECT OF CONFIRMATION; AND

6.    WHETHER THIS PLAN IS FEASIBLE.

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.  Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP ("Weiland Golden"), general insolvency counsel for the Trustee does not represent you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires that a disclosure statement contain "adequate information" concerning the Plan.  Following a hearing on December 22, 2010, the Court approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  Any party can now solicit votes for or against the Plan.

**B.    Deadlines for Voting and Objecting; Date of the Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1          **1.    Time and Place of the Confirmation Hearing**

2          The hearing where the Court will determine whether or not to confirm the Plan will

3    take place on April 1, 2011, at 10:00 a.m., and, to the extent necessary, also on April 8,

4    2011, at 10:00 a.m., in Courtroom 5A of the Ronald Reagan Federal Building and United

5    States Courthouse located at 411 West Fourth Street, Santa Ana, California 92701.

6          **2.    Deadline for Voting for or Against the Plan**

7          If you are entitled to vote, it is in your best interest to timely vote on the enclosed

8    ballot and return the ballot in the enclosed envelope to Weiland, Golden, Smiley, Wang

9    Ekvall & Strok, LLP, attn: Robert S. Marticello, Esq., 650 Town Center Drive, Suite 950,

10   Costa Mesa, California 92626.

11         Your ballot must be received no later than February 18, 2011 or it will not be

12   counted.

13         **3.    Deadline for Objecting to the Confirmation of the Plan**

14         Objections to the confirmation of the Plan must be filed with the Court and served

15   upon counsel for the Trustee so as to be received by no later than February 18, 2011.

16   Objections to the confirmation brief to be filed by the Trustee on March 4, 2011, must be

17   filed with the Court and served upon counsel for the Trustee so as to be received by no

18   later than March 14, 2011.

19         **4.    Identity of Person to Contact for More Information**

20              **Regarding the Plan**

21         Any interested party desiring further information about the Plan should contact

22   Evan D. Smiley or Robert S. Marticello of Weiland, Golden, Smiley, Wang Ekvall & Strok,

23   LLP, by phone at (714) 966-1000 or by e-mail at esmiley@wgllp.com or

24   rmarticello@wgllp.com.

25         **C.    Disclaimer**

26         The financial data relied upon in formulating the Plan is based on the financial

27   records of the Debtors or information provided by other parties in interest.  The

28   professionals employed by the Trustee drafted the Plan and the Disclosure Statement

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  based on this information and have no independent knowledge regarding the accuracy of

2  the data.  The Court has not yet determined whether or not the Plan is confirmable and

3  makes no recommendation as to whether or not you should support or oppose the Plan.

4  **II.    BACKGROUND**

5      **A.    Description and History of the Debtors' Business**

6          The Parent Debtor is a holding company, established to fund the real estate

7  development projects owned by each of its four operating subsidiaries, *i.e.*, the Subsidiary

8  Debtors and LBREP/L-SunCal Patterson Ranch LLC ("Patterson Ranch"), which entity is

9  not the subject of a bankrupcty proceeding.[2]  The Parent Debtor has cash in accounts with

10  a current aggregate balance of over $13 million.  The Parent Debtor's primary asset, other

11  than cash, is its interests in its operating subsidiaries.  The Parent Debtor is the sole

12  equity member of the Subsidary Debtors, each of which, in turn, owns a real estate

13  development project bearing the same name (each, a "Property" and collectively, the

14  "Properties").  The following is a brief summary of the Properties:

15      1.    McAllister Ranch:  LBREP/L-SunCal McAllister Ranch LLC ("McAllister

16          Ranch"), owns the real estate development project commonly known as

17          "McAllister Ranch" (the "McAllister Ranch Property"), which is located near

18          Bakersfield in Kern County, California.  The Trustee understands that the

19          McAllister Ranch Property is designed to be a 2,070 acre master-planned

20          community featuring a golf course, lake, and approximately 6,087 homes.

21          The Trustee further understands that all of the lots have been graded, and

22          the first of five planned subdivisions was nearly complete as of the Petition

23          Dates.  In addition, the golf course is completed and the clubhouse is framed

24          and roofed.

25

26

27  _____

[2]    As discussed in further detail below, by order entered on July 30, 2010, the Trustee abandoned the
28  Parent Debtor's membership interest in Patterson Ranch.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

2.    McSweeny Farms:  LBREP/L-SunCal McSweeny Farms LLC ("McSweeny Farms"), owns the real estate development project commonly known as "McSweeny Farms" (the "McSweeny Farms Property"), which is located near Hemet in Riverside County, California.  The Trustee understands that the McSweeny Farms Property is comprised of 673 acres, and a total of 1,640 lots are planned to be included thereon.  The Trustee further understands that Phase 1 of the project was completed and sold out as of the Petition Dates.

3.    Summerwind Ranch:  LBREP/L-SunCal Summerwind Ranch LLC ("Summerwind Ranch"), owns the real estate development project commonly known as "Summerwind Ranch" (the "Summerwind Ranch Property"), which is located near Calimesa in Riverside County, California.  The Trustee understands that the Summerwind Ranch Property is comprised of 2,591 acres with 3,683 lots planned thereon.

As discussed in further detail below, LCPI, as administrative agent for the 1st Lien Lenders, asserts a first-priority lien against the Properties and the Parent Debtor's Cash for the full amount of the loans to the Parent Debtor and guaranteed by the Subsidiary Debtors.  The second-position secured lenders (the "2nd Lien Lenders") and the third-position secured lenders (the "3rd Lien Lenders" and collectively with the 1st Lien Lenders and the 2nd Lien Lenders, the "Lien Lenders") also assert liens against the Properties and the Parent Debtor's Cash.

B.    **Principals/Affiliates of the Debtors' Business**

The members of the Parent Debtor are LBREP Lakeside SC Master I, LLC ("Lehman Lakeside") and SCC Ranch Ventures, LLC ("SunCal").  Ninety percent (90%) of the Parent Debtor is owned by Lehman Lakeside, which is an affiliate of LCPI and Lehman Bros. Real Estate Partners, LP ("LBREP").[3]  Although it is possible that

---

[3]    Both LCPI and LBREP are affiliates of Lehman Brothers Holding, Inc.

1  LCPI could be considered an "insider" of the Debtors under § 101(31) of the Bankruptcy

2  Code, LCPI does not concede that it is an insider, and any allegation about insider status

3  made in these Cases has been that LCPI is an insider and not the vast majority of 1st Lien

4  Lenders.  The remaining ten percent (10%) of the Parent Debtor is owned by SunCal,

5  which is an affiliate of SCC Acquisitions, Inc., dba SunCal Companies.  Lehman Lakeside

6  is the managing member of the Parent Debtor, and SunCal is the operating member.  The

7  Parent Debtor is the sole member of each of the Subsidiary Debtors.

8         **C.     Management of the Debtors Before and After Bankruptcy**

9         Prior to the commencement of the Cases, it is Trustee's understanding that

10  SunCal, as the operating member, was responsible for administering the day-to-day

11  business affairs of the Parent Debtor and the Subsidiary Debtors.  The Trustee further

12  understands that pre-petition the Parent Debtor entered into management agreements

13  with SunCal Management, LLC ("SunCal Management"), an affiliate of SunCal, to manage

14  the Properties.  At the request of the Trustee, SunCal Management has continued to

15  manage the Properties post-petition.

16        **D.     Events Leading to Chapter 11 Filing**

17               **1.     The January 2006 Loans**

18        The Parent Debtor, as borrower, entered into three lien credit agreements with

19  LCPI (collectively, the "Lien Credit Agreements").  Pursuant to that certain First Lien Credit

20  Agreement dated January 19, 2006 (the "First Lien Credit Agreement") and that certain

21  Second Lien Credit Agreement dated January 19, 2006 (the "Second Lien Credit

22  Agreement"), the Parent Debtor borrowed the principal amount of $320 million

23  (collectively, the "January 2006 Loans") as follows: (1) a revolving credit facility of $75

24  million and term loan facility of $160 million under the First Lien Credit Agreement; and (2)

25  a $85 million term loan facility under the Second Lien Credit Agreement.  LCPI was a

26  lender under the January 2006 Loans, and acted as the sole administrative agent, and

27  Lehman Brothers, Inc. ("Lehman Brothers"), served as the advisor, sole lead arranger and

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  syndication agent.  Later, Gramercy Warehouse Funding I, LLC ("Gramercy"), replaced

2  LCPI as the administrative agent under the Second Lien Credit Agreement.

3       The Parent Debtor's obligations under the First Lien Credit Agreement and the

4  Second Lien Credit Agreement were guaranteed by the Subsidiary Debtors, and these

5  upstream guaranties were secured by first and second liens against the Properties.  The

6  Subsidiary Debtors also contributed cash (approximately $45 million) towards the

7  repayment of certain previous loans totaling approximately $62 million made by Lehman

8  Ali, Inc. ("Lehman Ali"), to the Subsidiary Debtors and secured by the Properties (the

9  "Lehman Ali Loans"), which were repaid at the origination of the January 2006 Loans

10 using, in part, a portion of the proceeds from the January 2006 Loans.

11      The Debtors incurred secured debt totaling $320 million pursuant to the First and

12 Second Lien Credit Agreements.  However, a significant portion of the proceeds from the

13 January 2006 Loans was not available to the Debtors for operations and other uses.

14 Pursuant to the First Lien Credit Agreement, the sum of approximately $144 million was

15 paid directly from escrow to the Parent Debtor's equity owners (the "Dividend").  Of this

16 total sum, approximately $116.5 million was distributed to Lehman Lakeside, and

17 approximately $27.5 million was distributed to SunCal.  The sum of approximately $10.6

18 million was paid from escrow to LCPI for its arrangement and administration fee.

19 Approximately $62 million was disbursed to Lehman Ali to repay the Lehman Ali Loans.

20 Approximately $25 million of the loan proceeds was immediately set aside to fund a

21 "Development Account," which the Debtors were not permitted to use, except under

22 certain circumstances, but served as the Lien Lenders' collateral.

**2.    The February 2007 Loan**

24      By that certain Third Lien Credit Agreement dated February 6, 2007 (the "Third

25 Lien Credit Agreement"), the Parent Debtor obtained an additional $75 million term loan

26 (the "February 2007 Loan," collectively with the January 2006 Loans, the "Loans").  The

27 February 2007 Loan was guaranteed by the Subsidiary Debtors and secured by third-

28 priority liens against the Properties.  From the $75 million loaned to the Parent Debtor

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1  under the Third Lien Credit Agreement, $50 million was paid out of escrow directly to LCPI

2  to pay down the obligations under the First Lien Credit Agreement, allegedly leaving $25

3  million to fund operations and for other uses.  With respect to the February 2007 Loan,

4  LCPI was a lender and served as the administrative agent, and Lehman Brothers served

5  as advisor, sole arranger and syndication agent.  Square Mile Structured Debt (One),

6  LLC, and Square Mile Structured Debt (Two), LLC ("Square Mile"), collectively, later

7  replaced LCPI as the administrative agent under the Third Lien Credit Agreement.

8       Following the funding of the Loans, LCPI assigned a portion of its rights and

9  obligations under the Lien Credit Agreements and the loan commitments thereunder to

10  third parties.  However, LCPI currently owns approximately 30% of the Debtors'

11  obligations under the First Lien Credit Agreement, approximately 15% of the Debtors'

12  obligations under the Second Lien Credit Agreement, and approximately 64% of the

13  Debtors' obligations under the Third Lien Credit Agreement.

14           **3.    The Intercreditor Agreement**

15       In connection with the Lien Credit Agreements, LCPI, Gramercy, and Square Mile,

16  in their capacity as administrative agents for their respective Lien Lenders, entered into

17  that certain Amended and Restated Intercreditor Agreement (the "Intercreditor

18  Agreement"), dated as of February 6, 2007.  A true and correct copy of the Intercreditor

19  Agreement is attached hereto as Exhibit "1."  The 1st Lien Lenders contend that, under the

20  Intercreditor Agreement, any payments to the 2nd Lien Lenders and the 3rd Lien Lenders

21  must be paid over to the 1st Lien Lenders, until the 1st Lien Lenders are paid in full.  (*See*

22  Ex. 1 at §§ 2.1, 4.2.)  The 1st Lien Lenders further contend the Intercreditor Agreement

23  provides that the 2nd and 3rd Lien Lenders cannot benefit from avoidance of the 1st Lien

24  Lender's lien, rather, any proceeds received by the 2nd and 3rd Lien Lenders as a result of

25  the avoidance must be paid over to the 1st Lien Lenders.  (*See id.* at § 6.5.)

26

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

4.    **The Debtors' Alleged Defaults Under the Lien Credit
Agreements**

Pursuant to a Fourth Amendment and Waiver to the First Lien Credit Agreement dated January 31, 2008 (the "Amendment"), the Parent Debtor was required to increase the cash in the Development Account from $25 million to $50 million within 60 days (*i.e.*, by March 31, 2008).  The Parent Debtor was unable to increase the amount of funds deposited in the Development Account and, as result, on March 31, 2008, LCPI declared a default.  LCPI also declared defaults because the Debtors allegedly: (a) missed an interest payment; (b) failed to timely deliver financial statements; and (c) failed to pay a $100,000 administrative fee and maintain necessary liquidity requirements.

Based on the alleged defaults, LCPI commenced non-judicial foreclosure proceedings, and foreclosure sales were scheduled for September 12, 2008.  To prevent foreclosure, on September 10, 2008, Gramercy filed an involuntary petition against the Parent Debtor.  Gramercy and certain trade creditors filed involuntary petitions against the Subsidiary Debtors on September 11, 2008.  The involuntary petitions filed against the Debtors shall hereinafter be collectively referred to as the "Involuntary Petitions."  The commencement of the Cases stayed the foreclosure sales.

E.    **Significant Events During the Bankruptcy Cases**

1.    **The Lehman Bankruptcy Cases**

Shortly after the commencement of the Cases, on September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") filed a voluntary petition under chapter 11 of the Bankruptcy Code in the Southern District of New York (the "New York Bankruptcy Court").  Subsequently, 22 affiliates of LBHI, including LCPI (but not Lehman Lakeside), filed voluntary petitions under chapter 11 of the Bankruptcy Code.  The bankruptcy cases of LBHI, LCPI and the 21 remaining affiliates of LBHI (collectively, the "Lehman Bankruptcy Cases") are being jointly administered under the lead case of LBHI, Case No. 08-13555 (JMP).

### 2.    Bankruptcy Proceedings

#### a.    The Appointment of the Trustee and the Order for Relief

Following the commencement of the Cases, on October 15, 2008, the petitioning creditors, excluding Gramercy, filed a motion for the appointment of an interim trustee (the "Interim Trustee Motion"), which LCPI, as administrative agent for the 1st Lien Lenders, and the Debtors opposed.  On October 22, 2008, the Debtors answered the Involuntary Petitions, consented to the entry of orders for relief, and then filed motions to convert the Cases from chapter 11 to chapter 7 (collectively, the "Motions to Convert").  On October 28, 2008, the Court heard the Interim Trustee Motion, the Motions to Convert, and the stay relief motions filed by LCPI (discussed below).  The Court granted the Interim Trustee Motion and denied the Motions to Convert.

On October 29, 2008, the Office of the United States Trustee (the "OUST") filed an application to appoint Alfred H. Siegel as the chapter 11 trustee.  On October 30, 2008, the Court entered orders directing the appointment of a chapter 11 trustee and granting the OUST's application to appoint Alfred H. Siegel as the chapter 11 trustee.  Also on October 30, 2008, the Court entered orders for relief (the "Orders for Relief") in each of the Debtors' cases.  The Cases are being jointly administered pursuant to Court orders entered on November 13, 2008.

#### b.    The LCPI Stay Relief Motions

On October 2, 2008, LCPI filed a motion for relief from the automatic stay each individual Case (collectively, the "LCPI Stay Relief Motions"), to foreclose on the 1st Lien Lenders' security interests in the Properties and the Parent Debtor's Cash.  The LCPI Stay Relief Motions were originally scheduled for hearing on October 28, 2008.  The Court continued the hearing to November 20, 2008 to allow the Trustee an opportunity to analyze the motions and prepare a response, if necessary.  Both the Trustee and the Committee opposed the LCPI Stay Relief Motions, in part, because they disputed the amount and validity of LCPI's security interests based on the facts and circumstances surrounding the Loans.  Following a hearing on October 28, 2008, the Court set the LCPI

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  Stay Relief Motions for an evidentiary hearing on February 6, 2009 (the "Evidentiary

2  Hearing").  The Court also set certain related deadlines to designate experts, file expert

3  reports, and file trial briefs.  To prepare for the Evidentiary Hearing, the Trustee sought

4  discovery from LCPI and certain third parties.

5       The Trustee and LCPI entered into multiple stipulations to continue the Evidentiary

6  Hearing and extend the related deadlines, which were approved by the Court, and the

7  Evidentiary Hearing was ultimately continued to June 19, 2009.  However, in connection

8  with the first round of settlement discussions between the Trustee and LCPI, which are

9  discussed below, the parties entered into a stipulation, which was approved by the Court,

10  to take the Evidentiary Hearing off calendar, and to suspend the related deadlines and

11  discovery, subject to the parties' rights to re-notice and/or reinstate the same.  In light of

12  the settlement among the Trustee, the Committee, and LCPI and the 1st Lien Lenders, the

13  LCPI Stay Relief Motions have not been re-noticed and are not being pursued.

14       c.    The Settlement with LCPI and the 1st Lien Lenders

15            (1)    The Original Term Sheet

16       On October 9, 2009, after months of negotiations, the Trustee filed a motion (the

17  "First Compromise Motion") to approve a term sheet between the Trustee, the Committee,

18  and LCPI (the "Original Term Sheet").  The First Compromise Motion was, for various

19  reasons, opposed by multiple third parties, including Lehman Lakeside, Gramercy,

20  SunCal Management, and Fidelity National Title Insurance Company ("Fidelity").  The

21  First Compromise Motion was initially heard on November 3, 2009.  The Court continued

22  the hearing on the First Compromise Motion to December 17, 2009.  On November 25,

23  2009, the Trustee filed an *ex parte* motion to further continue the hearing for 30-45 days to

24  allow the Trustee an opportunity to resolve the objections to the First Compromise Motion.

25  On December 2, 2009, the Court entered an order granting the Trustee's *ex parte* motion,

26  and continued the hearing to February 2, 2010.

27       Certain of the issues raised by the parties opposing the First Compromise Motion,

28  and, in particular, Fidelity, highlighted an ambiguity in the Original Term Sheet, the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1  interpretation of which resulted in a dispute between the settling parties.  The Trustee, the

2  Committee, and LCPI attempted to resolve the dispute regarding the interpretation of the

3  Original Term Sheet, and the hearing on the First Compromise Motion was continued on

4  multiple occasions to give the parties an opportunity to reach a consensual resolution.

5  However, the parties were unable to resolve their differences.  As a result, on January 25,

6  2010, the Trustee filed a notice of withdrawal of the First Compromise Motion.  By letter

7  dated March 30, 2010, LCPI notified the Trustee of its termination of the proposed

8  settlement.

9                              (2)      The Amended Term Sheet

10          In July 2010, at the strong urging of the New York Bankruptcy Court, which is

11  discussed in further detail in Section II.E.2.e. below, the Trustee, the Committee, and

12  LCPI resumed settlement discussions in an attempt to resolve their disputes regarding the

13  Original Term Sheet.  The Trustee, the Committee, and LCPI, in its individual capacity and

14  as administrative agent for the 1st Lien Lenders, negotiated an amended and restated

15  term sheet (the "Amended Term Sheet").  A copy of the Amended Term Sheet, the terms

16  of which are incorporated herein by this express reference, is attached hereto as Exhibit

17  "2."

18          On September 2, 2010, LCPI filed a motion to approve the Amended Term Sheet

19  (the "LCPI Compromise Motion") in its own bankruptcy case pending in the New York

20  Bankruptcy Court.  The LCPI Compromise Motion was opposed by Gramercy and

21  Lehman Lakeside, and Fidelity filed a reservation of rights.  The LCPI Compromise Motion

22  was heard on September 22, 2010.  On September 29, 2010, the New York Bankruptcy

23  Court entered an order granting the LCPI Compromise Motion over the objections of

24  Lehman Lakeside and Gramercy.

25          On September 21, 2010, the Trustee filed his motion to approve the Amended

26  Term Sheet with the Court (the "Second Compromise Motion"), which was supported by

27  the Committee.  A true and correct copy of the Second Compromise Motion, without

28  exhibits, is attached hereto as Exhibit "9."  Lehman Lakeside, Gramercy, SunCal

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1    Management, and Superior Pipelines, Inc., filed objections to the Second Compromise

2    Motion, which were joined by the Bond Companies, and Fidelity filed a reservation of

3    rights. The Second Compromise Motion was initially heard on December 21, 2010. The

4    hearing on the Second Compromise Motion was continued to December 22, 2010, for the

5    Court's oral ruling. On December 22, 2010, the Court granted the Second Compromise

6    Motion and overruled the objections thereto, subject to the narrow conditions stated on the

7    record and incorporated in the order granting the Second Compromise Motion.

8        The Amended Term Sheet includes certain terms and provisions that are

9    incorporated in or are otherwise relevant to the Plan. The material terms of the Amended

10    Term Sheet, as modified by the Court's ruling, are summarized as follows:

11        1.    Allowance of LCPI Claim. Upon the date that the settlement becomes

12    effective under the Amended Term Sheet (the "Settlement Effective Date"),[4] the Claim of

13    the 1st Lien Lenders, for which LCPI serves as the administrative agent, will be an Allowed

14    Claim in each of the Cases in the aggregate amount of $230,006,233.98, plus accrued

15    and unpaid interest through the Petition Dates and legal fees. (See Ex. 2 at ¶ B.)

16        2.    Distributions on Settlement Effective Date.

17            a.    Distribution of the Development Account Funds. The Trustee will

18    retain $5.5 million from the funds originally held in the Development Account (the

19    "Development Account Funds"). Of this amount: (a) $3.5 million (the "Administrative

20    Funds") will be available for the administrative expenses of the Estates and for potential

21    distribution to the Holders of Claims other than the Lien Lenders (the "Trade Creditors" or

22    "General Unsecured Trade Creditors"); and (b) $2.0 million (the "Remaining Development

23    Funds") will be retained to pay the operating expenses of the Properties pursuant to an

24    approved budget. The balance of the Development Account Funds (net of the $5.5 million

25    retained by Trustee) will be transferred to the 1st Lien Lenders (the "Retained Settlement

---

[4]    The Settlement Effective Date will occur on the date the Court's order granting the Second
Compromise Motion becomes a "Final Order" (as defined in the Amended Term Sheet).

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  Funds") on the Settlement Effective Date.  (*See* Ex. 2 at ¶ C.1.)  If the Remaining

2  Development Funds are not sufficient to the operating expenses of the Properties, the 1st

3  Lien Lenders have agreed, subject to certain conditions and limitations, to the further use

4  of cash collateral to preserve the Properties.  (*See* Ex. 2 at ¶ H.)

5           b.      Allocation of the Yucaipa Funds.  The funds currently on deposit with

6  the Yucaipa Valley Water District ("YVWD") and paid to the Trustee pursuant to that

7  certain Settlement Agreement and Release Agreement (the "Yucaipa Settlement

8  Agreement") between the Trustee and Oak Valley Partners, L.P. (the "Yucaipa Funds"),[5]

9  will be split 50/50 between the Trustee and the 1st Lien Lenders.  The Trustee's 50%

10  portion of the Yucaipa Funds (the "Trustee's YFP") will be retained by the Trustee free

11  and clear of liens, Claims, interests, and encumbrances.  The Trustee's YFP will constitute

12  additional Administrative Funds and will be immediately available for use in the

13  administration of the Cases or any other purpose.  (*See* Ex. 2 at ¶ C.2.)

14           3.      Sale of Properties Under the Plan.  The Properties will be sold pursuant to a

15  plan under 11 U.S.C. § 1123(a)(5)(D) in accordance with bidding procedures developed

16  by the parties in consultation with a broker or brokers of their choosing (individually and

17  collectively, the "Approved Broker") and approved by the Court.  (*See* Ex. 2 at ¶ E.)  The

18  1st Lien Lenders will be entitled to credit bid for the Properties.  The initial credit bid by the

19  1st Lien Lenders shall be in the aggregate amount of at least $45 million (the "Aggregate

20  Minimum Credit Bid Amount") and the 1st Lien Lenders' aggregate credit bid will not

21  exceed the maximum credit bid amount established by the parties prior to the Settlement

22  Effective Date (the "Aggregate Maximum Credit Bid Amount").  Prior to the Settlement

23  Effective Date, the Aggregate Maximum Credit Bid Amount and the Aggregate Minimum

24  Credit Bid Amount will be allocated among the Properties by the parties in consultation

25

26  —————————————

27  [5]   As discussed in Section II.E.2.f. below, the is approximately $1,008,000.00 on deposit with the
YVWD, approximately $434,000 of which the Trustee will receive pursuant to the Yucaipa Settlement
Agreement.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  with the Approved Broker (each, an "Allocated [Minimum or Maximum] Credit Bid Amount"

2  and collectively, the "Allocated [Minimum or Maximum] Credit Bid Amounts").

3      4.    Resolution of Senior Liens. The Trustee will reasonably cooperate with the

4  1st Lien Lenders in their efforts to determine whether any liens are senior in priority to the

5  liens of the 1st Lien Lenders against the Properties (the "Senior Liens") and to determine

6  the amount of such Senior Liens. However, the Trustee will not be obligated to take any

7  action that would cause the Trustee or the Estates to incur material cost or liability. (See

8  Ex. 2 at ¶ J.)

9      5.    Distributions Pursuant to the Plan.

10         a.    Distributions of Other Recoveries. The plan will provide that all

11  proceeds recovered from sources other than the sale of the Properties or the Yucaipa

12  Funds (e.g., from fraudulent transfer litigation), subject to the payment of administrative

13  and priority unsecured claims, will be split 50/50 between the 1st Lien Lenders, on the one

14  hand, and the Trade Creditors (on an administratively consolidated pro rata basis), on the

15  other hand, until the Trade Creditors are paid in full (the "50/50 Distribution Scheme"). If,

16  under the Intercreditor Agreement, any distributions to the 2nd and 3rd Lien Lenders must

17  be paid to the 1st Lien Lenders, then the distributions shall be split 50/50 between the 1st

18  Lien Lenders and the Trade Creditors. If, on the other hand, the Intercreditor Agreement

19  is found not to require that the 2nd and 3rd Lien Lenders pay any and all distributions to the

20  1st Lien Lenders, then the Allowed Unsecured Claims of the 1st Lien Lenders, and, to the

21  extent necessary, the Allowed Unsecured Claims of LCPI, in its capacity as a 2nd Lien

22  Lender and as a 3rd Lien Lender, shall be assigned to the Estates for the benefit of the

23  Trade Creditors for the purpose of providing the Trade Creditors with the equivalent of

24  what they would have received under the 50/50 Distribution Scheme.[6] (See Ex. 2 at ¶ Q.)

25

26     [6]    Under this alternative, the Estates will receive up to 100% of the pro rata distribution to the 1st Lien

27  Lenders and LCPI through an assignment of their Allowed Unsecured Claims in order to provide the Estates
with 50% of the total recovery. Under either alternative, the 2nd and 3rd Lien Lenders will receive any
amounts they are otherwise entitled to receive under the Intercreditor Agreement.

28

1         b.      <u>The Trustee's Participation.</u> The Trustee shall be entitled to, and

2 shall recover and receive the lesser of (i) the amount necessary to pay the Allowed Claims

3 of the Trade Creditors (the "<u>Allowed Unsecured Trade Claims</u>"), or (ii) 3.5% of the net sale

4 proceeds from the sale of the Properties to a third party through the plan or, if the 1st Lien

5 Lenders acquire the Properties through the plan by way of a credit bid, then from the

6 proceeds from the subsequent disposition of the Properties by the 1st Lien Lenders.

7         6.      <u>Releases.</u> On the Settlement Effective Date, the Trustee shall be deemed to

8 have released the 1st Lien Lenders and LCPI (in its individual capacity and as

9 administrative agent for the 1st Lien Lenders), and, except those entities specifically

10 carved out below, their respective affiliated parties, officers, directors, employees, agents

11 and attorneys, and the 1st Lien Lenders and LCPI (in its individual capacity and as

12 administrative agent for the 1st Lien Lenders), shall be deemed to have released the

13 Estates and the Trustee and the Trustee's agents and attorneys, in each case for and

14 from all claims (as defined in § 101(5) of the Code and including any claims that could be

15 brought by or against the Trustee pursuant to the Code) other than the rights and benefits

16 granted and preserved under the Amended Term Sheet, including, without limitation, the

17 Allowed Claims set forth in the Amended Term Sheet and the rights to receive

18 Distributions based on those Allowed Claims. The Amended Term Sheet does not include

19 a release of any Causes of Action against any third parties other than the 1st Lien Lenders

20 and LCPI and their respective affiliated parties, officers, directors, employees, agents and

21 attorneys, and specifically does not include a release of Lehman Lakeside, SunCal, SCC

22 Acquisitions, Inc., or SCC Acquisitions, LLC, or any Causes of Action related to the acts of

23 the owners of any of the Debtors including any transfers of funds by any of the owners of

24 any of the Debtors. If the Settlement Effective Date does not occur for any reason, the

25 foregoing releases will be of no force or effect. (*See* Ex. 2 at ¶ K.)

26         7.      <u>Termination Event.</u> If a final order confirming the Plan is not in effect by

27 April 30, 2011 (or such later date as may be agreed upon by the Trustee, LCPI, and the

28 Committee), then: (a) the 1st Lien Lenders will be entitled to move for relief from the

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  automatic stay to foreclose on the Properties, and the Trustee and the Committee shall be

2  prohibited from challenging the 1st Lien Lenders' motion for stay relief or any request by

3  the 1st Lien Lenders that such motion to be heard on an expedited basis, or interfering

4  with the foreclosure of the Properties; (b) the Trustee will retain the Administrative Funds

5  and the Trustee's YFP free from the secured claims of the Lien Lenders; (c) the 1st Lien

6  Lenders will retain the balance of the Development Account Funds; and (d) the Trustee

7  shall immediately pay over to the 1st Lien Lenders the unused portion of the Remaining

8  Development Funds free of all claims and interests.  (*See* Ex. 2 at ¶ T.)

9          Lehman Lakeside objected to the Second Compromise Motion on the grounds that

10  Lehman Lakeside believes it is not fair and equitable under the Bankruptcy Rules because

11  it improperly prejudices Lehman Lakeside.  Lehman Lakeside contends that the release of

12  LCPI and the 1st Lien Lenders provided in the Amended Term Sheet is improper because

13  Lehman Lakeside asserts that those parties are liable for the Causes of Action being

14  pursued by the Trustee against Lehman Lakeside in the "Dividend Action" (defined

15  below), among other reasons.  The Trustee disagrees with Lehman Lakeside's position

16  and believes that the Amended Term Sheet, which is supported by the Committee and

17  has now been approved by the Court, is in the best interests of the Estates, and that the

18  Causes of Action being pursued against Lehman Lakeside (discussed in further detail

19  below) have merit.

20              d.    Cash Collateral and the Management of the Properties

21          During these Cases, the Trustee has been authorized to use cash collateral solely

22  to pay the expenses necessary to preserve and maintain the value of the Properties and

23  protect the Estates from liability pursuant to budgets prepared by SunCal Management.

24  Shortly after his appointment, on November 4, 2008, the Trustee filed an Emergency

25  Motion for Order Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c) (the

26  "Emergency Cash Collateral Motion"), which was opposed by LCPI.  On November 5,

27  2008, the Trustee filed a supplement to the Emergency Cash Collateral Motion to compel

28  turnover to the Trustee of the Development Account Funds, which were deposited in

1  accounts of the Debtors at First Bank.  The Emergency Cash Collateral Motion was heard

2  on November 6, 2008.  On November 12, 2008, the Court entered an order granting the

3  Emergency Cash Collateral Motion, and authorizing the use of cash collateral on an

4  interim basis pending a final hearing on November 20, 2008.  On November 24, 2008, the

5  Court entered an order directing First Bank to turnover the Development Account Funds to

6  the Trustee.  On December 8, 2008, the Court entered an order granting the Emergency

7  Cash Collateral Motion on a final basis through February 28, 2009.

8          On a number of occasions thereafter, the Trustee and LCPI stipulated to the use

9  of cash collateral on substantially the same terms and conditions, subject to a reservation

10  of rights, and with such approval to use cash collateral deemed over LCPI's continuing

11  objection.  Each stipulation was approved by the Court.  However, on other occasions, the

12  Trustee has been required to seek authorization to use cash collateral by motion.  In all,

13  the Trustee has filed seven motions for authority to use cash collateral, the majority of

14  which have been opposed by LCPI.

15          Unable to reach an agreement with LCPI regarding the use of cash collateral

16  beyond November 30, 2009 (due to the break down in negotiations related to the Original

17  Term Sheet), the Trustee filed motions for the use of cash collateral through December

18  31, 2009, March 31, 2010, and June, 30, 2010.  LCPI filed a limited objection to each

19  motion, and each motion was granted over LCPI's limited objection.  On May 27, 2010,

20  the Trustee filed a motion for authority to use cash collateral through and including

21  September 30, 2010.  LCPI filed an opposition to the motion.  On June 17, 2010, the

22  Court heard and granted the motion over LCPI's opposition.  On June 25, 2010, the Court

23  entered an Order Granting Motion for Order Authorizing Use of Cash Collateral Through

24  September 30, 2010 (the "Cash Collateral Order").  On July 9, 2010, LCPI filed a notice of

25  appeal of the Cash Collateral Order (the "Appeal").  In light of the Amended Term Sheet,

26  the Trustee and LCPI stipulated to stay the Appeal, and by order of the United States

27  Bankruptcy Appellate Panel of the Ninth Circuit entered on November 1, 2010, the Appeal

28  has been temporarily stayed until January 28, 2011, and all dates and deadlines are

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  currently suspended.  The Trustee expects that the Appeal will be dismissed by the

2  Confirmation Hearing.

3      The Trustee and LCPI stipulated to the use of cash collateral through the earlier of

4  December 31, 2010, or the Settlement Effective Date, which stipulation was filed with the

5  Court on September 30, 2010 and approved by Court order entered on October 1, 2010.

6  Because the Settlement Effective Date did not occur prior to December 31, 2010, LCPI

7  has agreed to the continued use of cash collateral on the same terms and conditions

8  pursuant to an approved budget pending the Settlement Effective Date, and the Trustee

9  and LCPI are in the process of preparing a stipulation to that effect.  As of December 8,

10 2010, the Trustee has used cash collateral totaling $4,265,130 to maintain the Properties.

11     As discussed above, at the request of the Trustee, SunCal Management has

12 continued to maintain the Properties post-petition, and has prepared the Trustee's cash

13 collateral budgets.  SunCal Management has been compensated on an hourly basis

14 pursuant to interim applications for payment of management fees in accordance with the

15 Court's various cash collateral orders.  To date, SunCal Management has been paid fees

16 totaling approximately $315,707.25 for its post-petition services.

17         e.    The Trustee's Stay Relief Motion

18     Following the breakdown in negotiations with LCPI regarding the Original Term

19 Sheet, the Trustee began diligently pursuing other alternatives.  The Trustee decided to

20 sell the Properties free and clear of liens and other interests, subject to overbid, and to

21 pursue the Estates' Causes of Action against LCPI and the other 1st Lien Lenders and

22 certain of other entities.  As discussed in further detail in Section II.E.2.k. below, the

23 Trustee selected a broker, subject to Court approval, to market and sell the Properties.

24 The Trustee received multiple letters of intent to purchase the Properties, and the Trustee

25 entered into an agreement to sell the Properties to a prospective buyer for $41 million,[7]

26

27     [7]  The 1st Lien Lenders' $45 million Minimum Aggregate Credit Bid Amount is approximately 10%
   greater than this amount, which was the highest third-party cash offer received by the Trustee.

28

1  subject to Court approval.  The Trustee also began preparing a motion to authorize the

2  sale of the Properties free and clear of liens and other interests, for approval of overbid

3  procedures, to deny credit bid rights, and for certain related relief.  However, before

4  further pursuing the sale of the Properties, the Trustee decided to seek stay relief in the

5  Lehman Bankruptcy Cases.

6       On June 17, 2010, the Trustee filed a motion in the New York Bankruptcy Court for

7  relief from the automatic stay (the "Trustee's Stay Relief Motion") to, among other things,

8  sell the Properties free and clear of liens, including the lien of LCPI, and to deny LCPI's

9  credit bid rights.  LCPI filed an opposition to the Trustee's Stay Relief Motion.  The

10  Trustee's Stay Relief Motion was initially heard on July 14, 2010.  The New York

11  Bankruptcy Court continued the hearing to August 18, 2010, and strongly suggested to

12  the Trustee, the Committee, and LCPI that they focus their attention on attempting to

13  resolve their differences as opposed to planning for expensive and protracted litigation.

14  As suggested by the New York Bankruptcy Court, the parties engaged in further

15  settlement discussions following the hearing and the result of such discussions was the

16  Amended Term Sheet.  In light of the Amended Term Sheet, which provides for the sale of

17  the Properties pursuant to a consensual process with LCPI, the Trustee's Stay Relief

18  Motion has been taken off calendar and is no longer being pursued.

19            f.    The Yucaipa Settlement

20       On August 13, 2010, the Trustee filed a motion to approve the Yucaipa Settlement

21  Agreement (the "Yucaipa Settlement Motion").  The Yucaipa Settlement Agreement

22  settles disputes between Summerwind Ranch's Estate and Oak Valley Partners, L.P.

23  ("Oak Valley") with respect to ownership of the $1,008,000 on deposit with the YVWD (the

24  "Yucaipa Deposit").  Pursuant to the Yucaipa Settlement Agreement, the Summerwind

25  Ranch Estate and Oak Valley agreed to split the Yucaipa Deposit 50/50, after payment of

26  up to $140,000 to a third party who also claims an interest in the Yucaipa Deposit.  In

27  addition, the Yucaipa Settlement Agreement provides that Oak Valley's Claim against

28  Summerwind Ranch's Estate in the approximate amount of $11,907,650 will be reduced

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1  by the sum of $3,271,079 for amounts that Summerwind Ranch asserted was owed to it

2  by Oak Valley.  The Yucaipa Settlement Motion was heard on September 30, 2010, and,

3  on October 8, 2010, the Court entered an order granting the Yucaipa Settlement Motion.

4  As a result, the Trustee expects to receive $434,000, of which 50% will be paid to LCPI on

5  the Settlement Effective Date pursuant to the Amended Term Sheet.  The remainder will

6  be used for the administration of the Estates.

7                    g.    The McSweeny Farm Lease

8         Prior to the Petition Dates, McSweeny Farms leased approximately 268 acres of

9  the McSweeny Farms Property more commonly know as "Phase 3" to Triple B Farms, Inc.

10  ("Triple B"), for the sole purpose of growing wheat.  The pre-petition lease expired by its

11  own terms on December 1, 2009.  On that same date, the Trustee and Triple B entered

12  into that certain Lease for Real Property for Agricultural Purposes (the "McSweeny Farm

13  Lease"), by which the Trustee continued to lease Phase 3 to Triple B for an additional one

14  (1) year term ending on November 30, 2010.  On December 17, 2009, the Trustee filed a

15  motion for approval of the McSweeny Farm Lease, which was granted by Court order

16  entered on February 2, 2010.

17         Pursuant to the McSweeny Farm Lease, in lieu of rental payments, Triple B is

18  responsible for maintaining Phase 3, which maintenance would otherwise cost the

19  McSweeny Farms Estate approximately $15,000 per year.  The McSweeny Farm Lease

20  expressly contemplates the sale of Phase 3 and permits the Trustee to either terminate

21  the McSweeny Farm Lease on 30 day's written notice or assign the McSweeny Farm

22  Lease to the buyer.  However, if the sale of  Phase 3 prevents Triple B from harvesting its

23  crops, then the Summerwind Ranch Estate must pay Triple B the fair market value of the

24  unharvested crops up to $22,000.  The Trustee is in the process of extending the term of

25  the McSweeny Farm Lease on substantially the same terms and conditions.

26                    h.    The Gramercy Loan

27         By stipulation filed on November 5, 2008 (the "Gramercy Stipulation"), Gramercy

28  agreed to pay all reasonable fees and expenses of the Trustee and the Trustee's

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1 professionals incurred through and including November 20, 2008. By order entered on

2 November 13, 2008, the Court approved the Gramercy Stipulation as modified therein.

3 Pursuant to the Court's order, Gramercy may seek allowance of a chapter 11

4 Administrative Expense Claim pursuant to 11 U.S.C. § 503(b)(1) on noticed motion for all

5 allowed fees and expenses of the Trustee and the Trustee's professionals paid by

6 Gramercy. Gramercy has not yet filed a motion for allowance of a chapter 11

7 Administrative Expense Claim.

8            i.      Abandonment of Membership Interests in Patterson

9                    Ranch

10           On June 28, 2010, the Trustee filed a motion to abandon the membership interests

11 of the Parent Debtor in Patterson Ranch (the "Abandonment Motion"). Patterson Ranch's

12 sole asset is a 3-acre parcel of undeveloped real property located in Oxnard, California

13 (the "Patterson Parcel"). The Trustee was informed that Patterson Ranch purchased the

14 Patterson Parcel for the purpose of providing drainage for a larger, adjacent parcel that

15 Patterson Ranch had the option to purchase, but did not ultimately purchase. The Parcel

16 did not appear to have any significant value as is. Furthermore, the Trustee was informed

17 that the Parcel, which is not property of the Estates, had allegedly become a dump site,

18 causing the County of Ventura to cite Patterson Ranch for code violations which require

19 abatement, and to impose civil administrative penalties in the amount of $375 *per day*.

20 The County of Ventura was also allegedly in the process of referring the matter to the

21 District Attorney's Office for criminal prosecution. On July 30, 2010, the Court entered an

22 order granting the Abandonment Motion, abandoning the Parent Debtor's interest in

23 Patterson Ranch effective as of the Petition Dates.

24           j.      Appointment of Committee

25           On November 12, 2008, the OUST appointed the Committee to represent the

26 interests of the general unsecured creditors of the jointly administered Estates. The

27 members of the Committee are: (1) TC Construction Co., Inc.; (2) West Coast Structures,

28 Inc., dba West Structures; (3) Stantec Consulting, Inc.; (4) Hemet Manufacturing Co., Inc.,

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  dba Genesis Construction; (5) Weston Mason Marketing; (6) Nissho of California, Inc.; (7)

2  Lennar Homes of California, Inc.; (8) Superior Pipelines, Inc.; and (9) John D. Scripter,

3  dba Masonry Plus.  Following its appointment, the Committee hired Levene, Neale,

4  Bender, Yoo & Brill L.L.P. ("Levene Neale") as its counsel, whose employment was

5  subsequently approved by order of the Court entered on March 31, 2009.

6                          k.       The Employment of Estate Professionals

7          By order entered on December 9, 2008, the Court authorized the employment of

8  Weiland Golden as the Trustee's general insolvency counsel.  By order entered on June

9  8, 2009, the Court authorized the employment of Grobstein Horwath & Company LLP, as

10 the Trustee's accountants and financial advisors.  By order entered on May 20, 2010,

11 Grobstein Horwath & Company LLP, was replaced by Crowe Horwath LP ("Crowe

12 Horwath") effective as of December 8, 2008.  By order entered on July 27, 2010, the Court

13 authorized the employment of Sills Cummis & Gross, P.C. ("Sills Cummis"), as the

14 Trustee's local counsel to assist with proceedings pending in the Lehman Bankruptcy

15 Cases involving the Trustee.

16         On June 16, 2010, the Trustee filed an application to employ the broker he selected

17 to market and sell the Properties, Madison Partners (the "Madison Employment

18 Application").  The Madison Employment Application was originally set for hearing on

19 August 3, 2010.  However, subsequent to filing the Madison Employment Application, the

20 Trustee entered into negotiations with LCPI regarding the Amended Term Sheet, which

21 contemplates the retention of a broker to market and sell the Properties that is mutually

22 acceptable to the Trustee and LCPI (i.e., the Approved Broker).  As a result, the hearing

23 on the Madison Employment Application was continued to September 16, 2010, and then

24 to November 16, 2010.  On November 12, 2010, the Trustee filed a notice of withdrawal of

25 the Madison Employment Application.  The Trustee and LCPI have reached a tentative

26 agreement regarding the employment of the Approved Broker.  The Trustee will be filing

27 an application to employ the Approved Broker.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    On November 5, 2010, the Trustee filed an application to employ the law firm

2  Orrick, Herrington & Sutcliffe LLP ("Orrick"), as his special counsel to commence and

3  prosecute the "Dividend Action" (defined below in Section II.E.4.b.) to, among other

4  things, avoid and recover the Dividend.  The terms and conditions of Orrick's employment

5  are fully set forth in the Retention Agreement Pursuant to 11 U.S.C. § 328, a copy of

6  which is attached to Orrick's employment application (the "Orrick Employment

7  Application").  The Trustee is requesting the employment of Orrick on a contingency fee

8  basis.  Orrick's contingency fee is summarized as follows:

9      1.    In the event a settlement of the Dividend Action with any of the defendants,

10            jointly or severally, is executed on or before February 28, 2011, Orrick will

11            receive the greater of 15% of any recovery or 1.5 times its fees incurred

12            (calculated at its regular hourly rates);

13     2.    In the event a settlement of the Dividend Action is reached with any of the

14            defendants after February 28, 2011, Orrick will receive: (i) 35% of any

15            recovery up to $15 million from the defendants, jointly or severally; plus (ii)

16            30% of any recovery between $15 million and $25 million from the

17            defendants, jointly or severally; plus (iii) 25% of any recovery over $25

18            million from the defendants, jointly or severally; and

19     3.    In the event the Dividend Action settles or a judgment is rendered or some

20            other form of recovery is achieved at any time after the date of submission of

21            the trial briefs or the final pre-trial conference (whichever is earlier), Orrick

22            will receive 40% of any post-trial brief or pre-trial conference settlement,

23            judgment or other recovery.

24    The Trustee believes that Orrick is qualified to prosecute the Dividend Action on

25  the Estates' behalf, and that the terms and conditions of Orrick's employment are fair and

26  reasonable.  On January 4, 2011, the Court heard and approved the Orrick Employment

27  Application.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

I.    The Claims Bar Date

On November 26, 2008, the Trustee filed a motion for an order fixing the deadline to file proofs of claim (the "Bar Date Motion").  By the Bar Date Motion, the Trustee initially requested that the Court order that LCPI must file a Proof of Claim within twenty (20) days of service of the Court's order granting the Bar Date Motion, and that all other creditors must file Proofs of Claim by January 20, 2009.  The Trustee requested an earlier bar date for LCPI to assist the Trustee in defending against the LCPI Stay Relief Motions.  LCPI filed an objection to the Bar Date Motion.  The Trustee and LCPI were able to resolve LCPI's objection consensually, and LCPI's objection was later withdrawn on December 17, 2008.

On January 14, 2009, the Court entered an order granting the Bar Date Motion (the "Bar Date Order"), as modified therein.  Pursuant to the Bar Date Order, the Court fixed March 20, 2009 (the "Bar Date") as the last date to file Proofs of Claim for all creditors provided the Trustee served notice of the Bar Date by January 20, 2009, and the Court approved the form of notice of the Bar Date attached to the Bar Date Order as Exhibit "1" (the "Bar Date Notice").  The Trustee served all creditors and parties in interest with the Bar Date Notice on January 15, 2009.

m.    The Debtors' Schedules, Interim Statements, and
Operating Reports

The Trustee believes that the Estates are in compliance with the requirements under 11 U.S.C. §§ 521, 1006 and 1107, and the applicable Guidelines of the OUST.  On December 5, 2008, the Debtors filed their respective bankruptcy schedules (the "Schedules") and statements of financial affairs ("SOFA").  The Trustee has prepared and submitted Monthly Operating Reports ("MOR") for the Estates through November 30, 2010.  The Debtors are current on the quarterly fees owed to the OUST.

**3.    Other Legal Proceedings**

The Debtors are defendants in many non-bankruptcy legal proceedings commenced pre-petition, which are primarily (but not exclusively) actions commenced by

1 Trade Creditors asserting mechanic's liens against one or more of the Properties.

2 Attached hereto as Exhibit "3" are the relevant pages of each Debtors' SOFA, listing the

3 non-bankruptcy legal proceedings of which the Debtors were aware as of the Petition

4 Dates. With the exception of the proceedings discussed immediately below, the Trustee

5 believes that all of these proceedings are stayed by operation of 11 U.S.C. § 362.

a.    The Superior Pipelines Action

7 Prior to the Petition Dates, Superior Pipelines, Inc. ("Superior Pipelines")

8 commenced a lawsuit (the "Superior Pipelines Action") against McAllister Ranch,

9 McAllister Ranch Irrigation District, LCPI, and Lehman Ali in the Kern County Superior

10 Court to foreclose on its asserted mechanic's lien against the McAllister Ranch Property

11 and to determine the nature, extent and validity of liens of various parties against the

12 McAllister Ranch Property and certain personal property of McAllister Ranch, *i.e.*, cash of

13 McAllister Ranch totaling approximately $2,035,000.00 deposited or otherwise in the

14 hands of third parties (the "McAllister Ranch Deposits").

15 Following the commencement of the Cases, Superior Pipelines removed the

16 Superior Pipelines Action to the United States Bankruptcy Court for the Eastern District of

17 California and then transferred venue to the Court (Case No. 8:09-ap-01318-ES). By

18 stipulation and order entered on October 6, 2009, Superior Pipelines obtained stay relief

19 in the Lehman Bankruptcy Cases to file a first amended complaint and to pursue the

20 claims asserted therein against LCPI. On October 6, 2009, Superior Pipelines filed its first

21 amended complaint naming, in addition to the aforementioned defendants, Gramercy,

22 Square Mile, Pacific Gas and Electric Company, and the Trustee. Among other relief,

23 Superior Pipelines seeks judgment against McAllister Ranch in the sum of $6,385,162.41

24 and a declaration that its asserted liens against the McAllister Ranch Property and the

25 McAllister Ranch Deposits are in first position.

26 On or around October 29, 2010, LCPI and Gramercy jointly moved for summary

27 judgment in the Superior Pipelines Action, which motion was set for hearing on March 3,

28 2011. The pretrial conference in the Superior Pipelines Action was set for November 18,

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1  2010.  However, on or around November 15, 2010, pursuant to a stipulation among the

2  parties, the Court entered an order assigning the matter to mediation.

3                                   b.      The Gramercy Action

4          On September 9, 2008, Gramercy commenced a lawsuit (the "Gramercy Action") in

5  the Superior Court of California in and for the County of Los Angeles, captioned *Gramercy*

6  *Warehouse Funding I LLC v. LBREP/L-SunCal Master I LLC, et al.*, Case No. BC397750,

7  against the Parent Debtor and Lehman Lakeside, and SunCal, SCC Acquisitions, Inc.,

8  SCC Acquisitions, LLC, and Bruce Elieff (collectively, the "SCC Entities") to avoid the

9  Dividend as a fraudulent transfer pursuant to California Civil Code § 3439.04.  After the

10  Petition Dates, Lehman Lakeside removed the Gramercy Action to the United States

11  Bankruptcy Court for the Central District of California, Los Angeles Division, and then

12  transferred the Gramercy Action to the Court.  On December 10, 2008, Lehman Lakeside

13  filed a motion to dismiss the Gramercy Action (the "Lakeside Motion to Dismiss"), which

14  was joined by the SCC Entities.

15          The hearing on the Lakeside Motion to Dismiss and the status conference in the

16  Gramercy Action (the "Gramercy Action Status Conference") were continued on multiple

17  occasions pursuant to stipulations between the parties and the Trustee, which were

18  approved by order of the Court.  On January 4, 2010, the Court entered a briefing and

19  scheduling order providing that the hearing on the Lakeside Motion to Dismiss and the

20  Gramercy Action Status Conference could be held no earlier than the first available

21  hearing date (in accordance with the Court's calendaring procedure) that is at least thirty

22  (30) days after the conclusion of the First Compromise Motion, and that the Gramercy

23  Action shall otherwise remain in abeyance until the re-noticed hearing date.  The hearing

24  on the Lakeside Motion to Dismiss and the Gramercy Action Status Conference can be

25  set by Lehman Lakeside filing and serving a notice of hearing, which must be filed and

26  served as soon as practicable once a hearing date is obtained, but, in any event, no later

27  than twenty-one (21) days prior to the date of the hearing.  To date, the hearing on the

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  Lakeside Motion to Dismiss and the Gramercy Action Status Conference have not been

2  re-noticed in accordance the Court's briefing and scheduling order.

3      Lehman Lakeside denies that the Gramercy Action has any merit and Lehman

4  Lakeside will vigorously defend itself from the Gramercy Action. It is Lehman Lakeside's

5  position that the Causes of Action to avoid the Dividend asserted in the Gramercy Action

6  arise from the same transaction and substantially related operative facts that are the

7  subject of the Second Compromise Motion. In light of the Trustee's commencement of the

8  Dividend Action (discussed below), in which the Trustee seeks to recover and avoid the

9  Dividend as a fraudulent transfer, Lehman Lakeside may seek to dismiss the Gramercy

10  Action or to consolidate the Gramercy Action with the Dividend Action.

11      The Trustee takes the position the causes of action asserted in the Gramercy

12  Action are property of the Estates, and that the Trustee is the sole party with standing to

13  avoid and recover the Dividend. Lehman Lakeside agrees with the Trustee's position in

14  this regard.

15          c.      The Hemet Manufacturing and Pacific States

16                  Engineering Actions

17      Two Trade Creditors of McSweeny Farms, Hemet Manufacturing, Inc., dba

18  Genesis Construction ("Hemet"), and Pacific States Engineering, Inc. ("Pacific States

19  Engineering"), commenced lawsuits in the Orange County Superior Court prior to the

20  Petition Dates to obtain a judgment against McSweeny Farms for amounts allegedly owed

21  for services rendered and to foreclose on asserted mechanic's liens against the

22  McSweeny Farms Property. Hemet asserts a Claim in the amount of $1,225,592.47, and

23  Pacific States Engineering asserts a Claim in the amount of $76,866.91. Hemet and

24  Pacific States Engineering obtained stay relief by orders entered on March 9, 2010, and

25  July 20, 2010, respectively, to proceed to judgment in their respective pre-petition actions

26  against McSweeny Farms and to enforce any judgment obtained against non-Estate

27  property only, such as, the insurance company or companies that allegedly issued

28  bond(s) related to the work performed. Hemet and Pacific States Engineering are not

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-965-1000   Fax 714-966-1002

1  permitted to enforce any judgment obtained against the property of the Estates.  The

2  Trustee is not aware of the status of the actions commenced by Hemet and Pacific States

3  Engineering.

4          **4.      Actual and Projected Recovery Avoidance Actions and**

5                  **Causes of Action**

6          Based on the facts and circumstances surrounding the Loans to the Parent Debtor

7  and guaranteed by the Subsidiary Debtors, which are outlined above, the Trustee believes

8  that Causes of Action exist against various principals and other third parties involved in

9  those transactions and the subsequent beneficiaries of those transactions.

10                  a.      Causes of Action Against the Lien Lenders

11          The Trustee believes that Causes of Action exist against the Lien Lenders to: (1)

12  avoid the liens held by the Lien Lenders against the Properties and the Debtors' personal

13  property, *e.g.*, the Development Account Funds, as fraudulent transfers and preserve

14  those liens for the benefit of the Estates; and (2) equitably subordinate the Claims of the

15  Lien Lenders and cause the liens securing those Claims to be transferred to the Estates.

16  The Trustee also believes that the Estates have Causes of Action against LCPI to recover

17  damages for lender liability.  LCPI vigorously disputes the Trustee's allegations.

18          As discussed above, the potential Causes of Action against LCPI and the 1st Lien

19  Lenders are being settled pursuant to the Amended Term Sheet and will be released on

20  the Settlement Effective Date.  To preserve the Causes of Action against LCPI and the 1st

21  Lien Lenders pending approval of the Amended Term Sheet, the Trustee entered into an

22  agreement with LCPI to toll any statutes or periods of limitation with respect to the Estates'

23  Causes of Action against LCPI and the 1st Lien Lenders, until the earlier of the date on

24  which the Court enters an order granting the Second Compromise Motion and March 31,

25  2011.

26          On October 29, 2010, the Trustee filed a complaint against Gramercy, in its

27  capacity as administrative agent for the 2nd Lien Lenders, and Square Mile, in its capacity

28  as administrative agent for the 3rd Lien Lenders, to, among other things: (1) avoid the liens

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  held by the 2nd Lien Lenders and the 3rd Lien Lenders against property of the Estates as

2  fraudulent transfers and to preserve those liens for the benefit of the Estates; and (2)

3  equitably subordinate the Claims of the 2nd Lien Lenders and the 3rd Lien Lenders and to

4  cause the liens securing those Claims to be transferred to the Estates.  The amount of

5  any recovery in this action is uncertain at this time.

6       The Causes of Action against the Lien Lenders, except those Causes of Action

7  released under the Amended Term Sheet, will be reserved for the benefit of the Estates

8  under the Plan.

9              b.      Causes of Action Against Lehman Lakeside and SunCal

10      On October 29, 2010, the Trustee filed a complaint in the United States District

11  Court for the Central District of California, Southern Division, against Lehman Lakeside,

12  SunCal, and certain principals and other third parties, captioned *Alfred H. Siegel, Chapter*

13  *11 Trustee v. LBREP Lakeside SC Master I, LLC et al.*, Case No. CV10-8191 GHK

14  (VBKx) (the "Dividend Action"), to, among other things: (1) avoid and recover the $144

15  million Dividend as a fraudulent transfer; (2) avoid and recover the Dividend as an

16  unlawful distribution; and (3) recover damages for breach of fiduciary duty.  As discussed

17  above, the Trustee has retained Orrick as his special counsel on a contingency fee basis,

18  subject to Court approval, to prosecute the Dividend Action on the Estates' behalf.  The

19  Trustee believes that the recovery of the Dividend will be the primary source of recovery

20  for Trade Creditors.  Any and all Causes of Action held by the Debtors and their Estates

21  against Lehman Lakeside, SunCal, their respective principals and any other related third

22  parties are reserved under the Plan for the benefit of the Estates.

23      The Trustee believes that the Dividend Action has merit and could result in a

24  substantial recovery for the Estates.  However, Lehman Lakeside denies that the Dividend

25  Action has any merit and Lehman Lakeside has stated that it will vigorously defend itself

26  from the Dividend Action.  It is Lehman Lakeside's position that the Causes of Action to

27  avoid the Dividend asserted in the Dividend Action arise from the same transaction and

28  substantially related operative facts that are the subject of the Second Compromise

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   Motion.  Lehman Lakeside also disputes the factual assertions contained in this

2   Disclosure Statement, and, therefore, expressly reserves all of its rights with respect to

3   such assertions.

4                           c.      Other Potential Avoidance Actions

5          Attached hereto as Exhibit "4" are the lists that the Debtors attached to their SOFAs

6   of all payments made to creditors during the 90-day period prior to the Petition Dates.

7   Avoidance Actions may exist against some or all of these transferees, and all Avoidance

8   Actions under 11 U.S.C. §§ 544 through 550, including, but not limited to, claims for the

9   recovery of preferential transfers, are hereby reserved against all entities for the benefit of

10  the Estates.  The omission of the identity of a recipient of a potentially avoidable and

11  recoverable transfer or of a particular payment from Exhibit "4" is unintentional and shall

12  not be deemed a waiver of the right of the estates to recover any distribution(s),

13  payment(s), or transfer(s) from any entity under any provision of the Bankruptcy Code.  It

14  is likely that a significant majority of the payments are either not avoidable or are subject

15  to a valid affirmative defense.

16         On October 29, 2010, the Trustee filed three complaints against SunCal

17  Management, one on behalf of each Subsidiary Debtor, to avoid and recover asserted

18  preferential payments totaling $535,451 pursuant to 11 U.S.C. §§ 547 and 550.  The

19  amount of any recoveries in these actions is uncertain at this time.

20             **5.      Procedures Implemented to Resolve Financial Problems**

21         With a few exceptions, the Properties remain largely undeveloped.  The only Cash

22  in the Estates is the asserted cash collateral of the Lien Lenders.  The Debtors have no

23  operations or other source of revenue, and no development of the Properties has

24  occurred during the Cases.  The Debtors' only assets consist of the Development Account

25  Funds and the Properties, all of which are subject to the asserted liens of the Lien

26  Lenders.  The amount of the Secured Claims asserted by the Lien Lenders totals

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   approximately $390,006,233.98.  In contrast, the appraised "as-is" value of the Properties,

2   as of March 2008, was $180,700,000, and as of November 2008, was $62,000,000.[8]

3        As discussed above, following the breakdown in negotiations with LCPI regarding

4   the Original Term Sheet, the Trustee began diligently pursuing the sale of the Properties.

5   The Trustee received letters of intent or less formal expressions of interest to purchase

6   the Properties from approximately ten (10) to fifteen (15) entities.  The highest offer was in

7   the amount of $41,000,000.00 by Land Co. Coldwater Endeavor, LLC.[9]

8        Based on the foregoing, the amount owed to the Lien Lenders is likely far more

9   then the current value of the Properties and other collateral.  Absent costly and protracted

10  litigation with the Lien Lenders, it is unlikely that the Estates could realize value from the

11  Properties, the proceeds from the sale of the Properties, or the Development Account

12  Funds.  Moreover, the longer the Trustee remains in possession of the Properties, which

13  consist of more than 5,000 acres, the greater the holding costs to prevent vandalism,

14  remain in compliance with municipal regulations, and otherwise prevent health and safety

15  issues from arising.

16       With the foregoing considerations in mind, the Trustee determined that the highest

17  and best value alternative was to settle the Estates' Causes of Action against LCPI and

18  the 1st Lien Lenders on the terms and conditions set forth in the Amended Term Sheet

19  and to liquidate the Debtors' assets.  More specifically, the Amended Term Sheet:

20       1.    Resolves multiple contested proceedings with the Estates' largest creditors

21             (LCPI and the 1st Lien Lenders), thereby saving the Estates' significant

22             administrative expense;

23

24

25

---

26  [8]    Because both of the above-referenced appraised values are over two years old, the value of the
Properties may currently be considerably less.  The value of the Properties will not fully be determined until
their sale through the Plan.

27  [9]    The 1st Lien Lenders' $45 million Minimum Aggregate Credit Bid Amount is approximately 10%
greater than amount offered by Land Co. Coldwater Endeavor, LLC.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1    2.    Enables the Trustee to sell the Properties with the 1st Lien Lenders'

2         consent, and, thereby, avoid future holding costs and the further dissipation

3         of the Cash on hand;

4    3.    Entitles the Estates to a carve out from the 1st Lien Lenders' collateral in the

5         form of $3.7 million of the 1st Lien Lenders' asserted Cash collateral and up

6         to 3.5% of the proceeds from the disposition of the Properties; and

7    4.    Requires LCPI and the 1st Lien Lenders to essentially "give up" up to fifty

8         percent (50%) of any net recoveries from the pursuit of the Dividend Action

9         or other Causes of Action against third parties for the sole benefit of the

10         Unsecured Trade Creditors, and, due to the Amended Term Sheet, the

11         Trustee will have the unencumbered Cash to pursue such Causes of Action.

12         See Section IV.B. below and the spreadsheet attached hereto as Exhibit

13         "10" for the further information regarding the benefits of the 50/50

14         Distribution Scheme.

15         For further information regarding the decision of the Trustee settle the Estates'

16    Causes of Action against LCPI, which settlement is supported by the Committee and has

17    been approved by the Court, see the Second Compromise Motion, a copy of which,

18    without exhibits, is attached hereto as Exhibit "9."

19         In sum, pursuant to the Plan, all of the Debtors' assets of value will be liquidated

20    and the proceeds distributed through a liquidating trust in accordance with the Plan's

21    terms.  See Section III.F. of this document for a further discussion of the Trustee's

22    proposed means of resolving the Debtors' financial problems and implementing the Plan.

23              **6.    Current and Historical Financial Conditions**

24         As discussed above, the Properties are largely undeveloped and the Debtors do

25    not have operations.  The Debtors' assets and their value are more specifically identified

26    in the liquidation analysis in Section IV.B. below.  Because the Plan proposes to liquidate

27    all assets for the benefit of creditors, the Debtors' historical financial condition is not

28

1  relevant.  Nevertheless, a budget to actual report through December 8, 2010, which was

2  prepared by SunCal Management, is attached hereto as Exhibit "5."

3  **III.    SUMMARY OF THE PLAN**

4       The following is a summary of the material provisions of the Plan.

5       **A.    The Plan is a Liquidating Plan**

6       The goal of the Plan is to liquidate the real property and other assets of the

7  Debtors' Estates, including Causes of Action held by the Estates, and to distribute any

8  resulting net proceeds.  Under the Plan, the Properties will be sold to the 1st Lien Lenders

9  on account of the 1st Lien Lenders' Allowed Secured Claim and/or to one or more third

10 parties in accordance with bidding procedures approved by the Court.  All other assets of

11 the Debtors' Estates will be transferred to the liquidating trust (the "Liquidating Trust")

12 established on the Effective Date of the Plan.  Any and all Avoidance Actions and other

13 Causes of Action of the Estates are reserved under the Plan and will be transferred to the

14 Liquidating Trust, and the Liquidating Trustee will be vested with standing to pursue such

15 Avoidance Actions and Causes of Action.  Generally speaking, under the Plan,

16 Distributions can be made from the following three potential sources of Cash: (1) any

17 remaining Administrative Funds; (2) the Estates' share of any proceeds from the sale or

18 other disposition of the Properties; and (3) any net recoveries from any Avoidance Actions

19 or other Causes of Action asserted by the Estates against third parties.  The foregoing

20 sources of Cash will be paid to and administered and distributed by the Liquidating

21 Trustee.  The primary potential source of repayment for Unsecured Trade Creditors will be

22 any net proceeds from litigation, such as, the Estates' Causes of Action to avoid and

23 recover the Dividend.

24      **B.    The Plan Treats Claims Against All Estates**

25      The Plan provides treatment for the Claims against each of the Debtors' Estates.

26 The Plan does not provide for the substantive consolidation of the Estates.  Rather, the

27 Plan contains essentially four (4) separate chapter 11 plans, one plan for each Debtor.

28 The Trustee is submitting one plan and disclosure statement to simplify drafting and to

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  avoid duplicative costs relating to the preparation and distribution of multiple plans and

2  disclosure statements.  Many of the procedural provisions and the treatment provided for

3  each Class of Claims of a similar priority in each Estate is the same.  Moreover, the Lien

4  Lenders assert their respective Claims against each Debtor for the full amount owed, and

5  the Allowed General Unsecured Trade Claims against each Estate will receive periodic

6  Distributions from any Available Cash on a consolidated basis.  However, for voting

7  purposes, each Holder of a Claim in a Class will vote its Claim in such Class by individual

8  Debtor.  The classification scheme set forth below applies to each Debtor, but to the

9  extent there are no Claims in a certain Class against a particular Debtor, that Class will be

10  deemed not to exist for any purpose whatsoever as to that Debtor.  Creditors asserting the

11  same Claim against more than one Estate or Debtor will receive only one satisfaction of

12  such Claim.[10]

13          Unless otherwise expressly stated in the Plan, the treatment of Allowed Claims and

14  Allowed Interests under the Plan supersedes any agreements or rights the Holders of

15  those Claims or Interests may have in or against the Debtors or their assets and is in full

16  satisfaction of the legal, equitable, and contractual rights of the Holders of the Claims or

17  Interests.  Unless the Plan provides otherwise, no Distributions will be made and no rights

18  retained on account of any Claim or Interest that has not become an Allowed Claim or

19  Allowed Interest.

20      **C.**    **What Creditors and Interest Holders Will Receive Under the**

21          **Proposed Plan**

22          As required by the Bankruptcy Code, the Plan classifies Claims and Interests in

23  various Classes according to their right to priority.  The Plan states whether each Class of

24  Claims or Interests is impaired or unimpaired.  The Plan provides the treatment each

25

26  _____

27  [10]    For example, if a creditor asserts the same Claim in the amount of $1,000.00 for services rendered
to the McAllister Ranch Property against both McAllister Ranch and the Parent Debtor, the creditor will be
paid only $1,000.00 on account of such Claim, if allowed.

28

1    Class will receive.  In no event shall any creditor receive more than the creditor's Allowed

2    Claim, plus interest, to the extent provided herein.

3        **D.    Unclassified Claims**

4        Certain types of Claims are not placed into voting classes but are instead

5    unclassified.  They are not considered impaired and they do not vote on the Plan because

6    they are automatically entitled to certain treatment under the Bankruptcy Code.

7    Accordingly, the following Claims have not been placed into a Class:

8        **1.    Administrative Expenses**

9        Administrative Expenses Claims are Claims for costs or expenses of administering

10    the Debtors' Cases which are allowed under § 507(a)(2) of the Bankruptcy Code.  The

11    Bankruptcy Code requires that all Allowed Administrative Claims be paid on the Effective

12    Date of the Plan, unless a particular claimant agrees to a different treatment.  The

13    following charts list all of the Debtors' § 507(a)(2) unpaid Administrative Claims and their

14    treatment under the Plan:

| Non-Professional Administrative Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Ordinary-Course Administrative Claims | $0.00 | Unless the Trustee or the Liquidating Trustee object to an Ordinary-Course Administrative Claim, the Claim will be Allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary-Course Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim need not File any Request for Payment of its Claim. |
| Gramercy's Non-Ordinary Course Administrative Claim for the payment of the allowed fees and expenses of the Trustee and the Trustee's professionals pursuant to the Gramercy Stipulation | To be determined | Paid in full by the Trustee or the Liquidating Trustee on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing Gramercy's Non-Ordinary-Course Administrative Claim. |
| Other Non-Ordinary Course Administrative Claims | $0.00 | To the extent that any Non-Ordinary-Course Administrative Claims are Allowed, they will be |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

| Non-Professional Administrative Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| | | paid in full by the Trustee or the Liquidating Trustee on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Non-Ordinary-Course Administrative Claim. |
| Clerk's Office Fees | $0.00 | Paid in full on or before the Effective Date. |
| Office of the United States Trustee Fees | $0.00 | Paid in full on or before the Effective Date. |
| Administrative Tax Claims | $0.00 | Unless the Trustee or the Liquidating Trustee objects to an Administrative Tax Claim or otherwise disputes the Administrative Tax Claim in accordance with applicable law, the Claim will be Allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Administrative Tax Claim, and the Person holding the Administrative Tax Claim need not file any Request for Payment of its Claim. Any Administrative Tax Claim asserted by the County of Riverside will be paid in the ordinary course of business, currently and timely as they are incurred and billed, unless the Trustee or the Liquidating Trustee objects to or otherwise disputes such Administrative Tax Claim in accordance with applicable law. In an event of default, and to the extent such Administrative Tax Claim is also secured, the payment thereof will include all costs, fees, charges and interest, if applicable, as required under 11 U.S.C. §§ 506(b) and 511, and applicable non-bankruptcy law. |
| Total | $0.00 | |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

554618.1

FIRST AMENDED
DISCLOSURE STATEMENT

| Professional-Fee Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Alfred H. Siegel | $535,000.00 | Paid in full on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Professional-Fee Claim. |
| Weiland Golden | $1,300,000.00 | Paid in full on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Professional-Fee Claim. |
| Levene Neale | $800,000.00 | Paid in full on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Professional-Fee Claim. |
| Crowe Horwath | $230,000.00 | Paid in full on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Professional-Fee Claim. |
| Sills Cummis | $75,000.00 | Paid in full on the later of (i) the Effective Date, and (ii) the date that is ten (10) Business Days after the Court enters a Final Order allowing the Professional-Fee Claim. |
| Total | $2,940,000.00[11] | |

The following applies to Administrative Claims asserted in each Estate:

        a.     Ordinary Course Administrative Claims

Unless the Liquidating Trustee or other party-in-interest objects to an Ordinary-Course Administrative Claim, the Claim will be deemed Allowed in accordance with the terms and conditions of the particular transaction that gave rise to the Ordinary-Course Administrative Claim, and the Person holding the Ordinary-Course Administrative Claim need not File any Request for Payment of its Claim. However, any Request for Payment,

---

[11]   The estimate of Professional-Fee Claims is only an estimate and will change based upon the services required during these Cases and upon what the Court ultimately awards to professionals. The Estates remain liable for all allowed fees and costs regardless of the estimates.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  or Motion to allow a Claim as an Ordinary-Course Administrative Claim must be Filed with

2  the Court and served on counsel for the Trustee or the Liquidating Trustee, as the case

3  may be, and the OUST by no later than sixty (60) days after the Effective Date.

4            b.    Non-Ordinary-Course Administrative Claims

5        A Non-Ordinary-Course Administrative Claim will be paid by the Trustee on the

6  Effective Date to the extent that prior to the Effective Date it has already been determined

7  to be an Allowed Non-Ordinary-Course Administrative Claim by the Court pursuant to a

8  Final Order.  Any other Non-Ordinary-Course Administrative Claim will be paid by the

9  Liquidating Trustee to the extent that it is allowed by the Court only if: (1) on or before

10  sixty (60) days after the Effective Date, the Person holding the Non-Ordinary Course

11  Administrative Claim both Files with the Court a Request for Payment of the Non-

12  Ordinary-Course Administrative Claim and serves the Request for Payment on counsel for

13  the Liquidating Trustee and the OUST; and (b) the Court, in a Final Order, allows the Non-

14  Ordinary-Course Administrative Claim.  Any party-in-interest, including, but not limited to,

15  the Liquidating Trustee, may File an objection to such a Request for Payment within the

16  time provided by the Bankruptcy Rules or within any other period the Court establishes.

17  Persons holding Non-Ordinary-Course Administrative Claims who do not timely File and

18  serve a Request for Payment will be forever barred from asserting these Claims or

19  sustaining any action seeking payment in any forum or from any court deriving from these

20  Claims against the Estates, the Debtors, the Trustee, the Liquidating Trust, the Liquidating

21  Trustee, or their property.

22            c.    Professional-Fee Claims

23        A Professional-Fee Claim will be paid only if: (a) on or before forty-five (45) days

24  after the Effective Date (or such further date if extended by Court order), the Person

25  holding the Professional-Fee Claim both Files with the Court an application requesting

26  allowance and payment of the Professional-Fee Claim; and (b) the Professional-Fee

27  Claim is allowed by order of the Court (as to which fourteen (14) days has passed without

28  a stay of the enforcement or effectiveness of such order or, if a stay has been obtained,

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  such stay has lapsed or been dissolved).  The Liquidating Trustee or any other party-in-

2  interest may File an objection to such an application within the time provided by the

3  Bankruptcy Rules or within any other period that the Court establishes.  Persons holding

4  Professional-Fee Claims who do not timely File and serve an application for allowance

5  and payment will be forever barred from asserting these Claims against the Estates, the

6  Debtors, the Trustee, the Liquidating Trust, the Liquidating Trustee or their property.

7       As is indicated above, the Trustee estimates that he will need to pay Administrative

8  Expense Claims totaling approximately $2,940,000.00 on the Effective Date, unless the

9  Claimant has agreed to be paid later or the Court has not yet ruled on the Claim.  The

10  Trustee expects that he will have sufficient Administrative Funds in excess of this amount

11  on the Effective Date to make the necessary payments.

12       **2.    Priority Tax Claims**

13       Priority Tax Claims include certain unsecured income, employment and other taxes

14  described by Bankruptcy Code § 507(a)(8).  The Bankruptcy Code requires that each

15  Holder of such a § 507(a)(8) Priority Tax Claim receive the present value of such Claim in

16  regular installment payments in Cash, over a period not exceeding five years from the

17  Petition Date, unless the Holder agrees to a different treatment.  The following chart lists

18  all of the Debtors' known § 507(a)(8) Priority Tax Claims and their treatment under the

19  Plan:

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

| Priority Tax Claims | | |
|---|---|---|
| Description | Estimated Amount Owed | Treatment |
| Priority Tax Claims | $0.00 | The Holders of Allowed Priority Tax Claims will be paid in full the allowed amount of their Claims on the Effective Date or as soon as reasonably practicable thereafter, but, in no event, more than five (5) years from the entry of the Orders for Relief.  Allowed Priority Tax Claims shall accrue interest from the Effective Date on the unpaid balance of the Allowed Priority Tax Claim at the rate required by 11 U.S.C. § 511 to provide "present value" of the Allowed Priority Tax Claim. |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

### E.    Classified Claims

#### 1.    Summary of Classes

| Summary of Classes | |
|---|---|
| Class[12] | Claimant(s) |
| 1(a)-(d) | Secured Claim of the 1st Lien Lenders |
| 2(a)-(d) | Secured Claim of the 2nd Lien Lenders |
| 3(a)-(d) | Secured Claim of the 3rd Lien Lenders |
| 4(a)-(d) | Secured Claim of Mechanic's Lien Claimants |
| 5(a)-(d) | Priority Unsecured Claims Pursuant to 11 U.S.C. §§ 507(a)(6)-(7) |
| 6(a)-(d) | Priority Unsecured Wage Claims Pursuant to 11 U.S.C. §§ 507(a)(4)-(5) |
| 7(a)-(d) | Unsecured Deficiency Claims of the 1st Lien Lenders |
| 8(a)-(d) | Contractually Subordinated Unsecured Deficiency Claims of the 2nd and 3rd Lien Lenders |
| 9(a)-(d) | General Unsecured Trade Claims |
| 10(a)-(d) | Interest Holders |

#### 2.    Secured Claims

Secured Claims are Claims secured by liens against property of one or more of the Estates.

##### a.    Secured Claim of the 1st Lien Lenders

Classes 1(a)-(d) consist of the Secured Claim of the 1st Lien Lenders. In accordance with the terms of the Amended Term Sheet, the 1st Lien Lenders hold an Allowed Claim against each of the Estates in the aggregate amount of $230,006,233.98, plus accrued and unpaid interest calculated through September 10, 2008, and accrued and unpaid legal fees (the "1st Lien Lenders Allowed Claim"), secured by a senior-in-priority lien against substantially all of the Debtors' assets, including, but not limited to, the Properties and the Retained Settlement Funds, subject to any earlier recorded and perfected liens. The value of the Properties will be determined in connection with the proposed sale of the Properties. The treatment provided herein shall be in full settlement

---

[12]    With respect to each Class, sub-Class (a) refers to the SunCal Master Estate, sub-Class (b) refers to the McAllister Ranch Estate, sub-Class (c) refers to the McSweeny Farms Estate, and sub-Class (d) refers to the Summerwind Ranch Estate.

FIRST AMENDED
DISCLOSURE STATEMENT

1  and satisfaction of the 1st Lien Lenders' Allowed Secured Claim against each of the

2  Debtors.

3       **i.**     **Calculation of Secured Claim.**  In accordance with the terms of the

4  Amended Term Sheet, the 1st Lien Lenders hold an Allowed Secured Claim in each of the

5  Estates in an amount equal to the aggregate amount of the "Winning Bid(s)" (as defined in

6  the Overbid Procedures) for the Properties, plus the amount of the Retained Settlement

7  Funds as of the Effective Date, less the amount of any customary costs and expenses of

8  sale, including brokers' commissions, liabilities, liens, Claims, encumbrances or interests,

9  including, but not limited to, any Senior Liens, (a) assumed by the 1st Lien Lenders in

10  connection with the transfer of title to any Properties sold to the 1st Lien Lenders by way of

11  credit bid, or (b) assumed by the 1st Lien Lenders in connection with or paid prior to the

12  distribution of the proceeds from the sale of the Properties sold to one or more "Winning

13  Bidders" (as defined in the Overbid Procedures) other than the 1st Lien Lenders, up to the

14  amount of the 1st Lien Lenders' Allowed Claim.

15       **ii.**     **1st Lien Lenders' Credit Bid Rights.**  The 1st Lien Lenders acting

16  collectively shall be the initial bidder with respect to each of the Properties.  The initial

17  credit bid by the 1st Lien Lenders shall be the Aggregate Minimum Credit Bid Amount and,

18  with respect to each Property, the Allocated Minimum Credit Bid Amount for the Property.

19  With respect to each Property, the 1st Lien Lenders, in their sole and absolute discretion,

20  shall be entitled to increase their credit bid in accordance with the Overbid Procedures to

21  an amount in excess of the highest competing bid for such Property, if any, up to the

22  Allocated Maximum Credit Bid Amount for the Property.

23       **iii.**     **Payment of Secured Claim.**  Properties for which the 1st Lien Lenders are

24  determined to be the Winning Bidder by way of credit bid shall be transferred to the 1st

25  Lien Lenders on the Effective Date or as soon as reasonably practicable thereafter subject

26  to: (1) any Senior Liens; and (2) liens, Claims, encumbrances or interests that satisfy

27  clause (b), (c), and/or (d) of the definition of "Permitted Exceptions" set forth in the First

28  Lien Credit Agreement (the items described in this clause (2) collectively, the "Permitted

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

554618.1

FIRST AMENDED
DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  Liens"). Properties sold to Winning Bidder(s) other than the 1st Lien Lenders shall be sold

2  free and clear of all liens, including, but not limited to, the liens of the 1st Lien Lenders,

3  except, however, the Permitted Liens, which shall not include any Senior Liens. On the

4  later of the Effective Date or the close of escrow, the proceeds from the sale of the

5  Properties sold to a Winning Bidder other than the 1st Lien Lenders, less ordinary costs of

6  sale, shall be distributed to LCPI, in its capacity as administrative agent for the 1st Lien

7  Lenders, subject to any Senior Liens.

8      iv.    **The Trustee's Participation**. The Liquidating Trustee, on behalf of the

9  Holders of Allowed Unsecured Trade Claims, shall be entitled to, and shall recover and

10 receive from the "Proceeds" (hereinafter defined) of the dispositions of the Properties, the

11 lesser of (1) the amount sufficient to pay in full the Allowed Unsecured Trade Claims to

12 the extent not previously paid, and (2) 3.5% of such Proceeds (the "Trustee's

13 Participation"); provided that, at the time of any such subsequent disposition the Holders

14 of Allowed Unsecured Trade Claims shall not have otherwise been paid the full allowed

15 amount of their Claims. The Trustee's Participation in each portion of any Proceeds that

16 consists of Cash shall be immediately due and payable to the Liquidating Trustee from the

17 1st Lien Lenders in Cash upon the 1st Lien Lenders' receipt of such portion of the

18 applicable Proceeds; provided, however, payment of the Trustee's Participation from

19 Proceeds from the sale of Properties to one or more Winning Bidders other than the 1st

20 Lien Lenders under the Plan shall only be made at such time when all Senior Liens have

21 been resolved or Fidelity has accepted responsibility for all remaining Senior Liens.[13] The

22 Trustee's Participation shall be transferred to the Liquidating Trustee free and clear of the

23 liens of the Lien Lenders to be distributed in accordance with the terms of the Plan.

24     As used herein, "Proceeds" shall mean all cash and other property constituting

25 proceeds of the disposition of each Property, including the proceeds from the sale of any

26 _____

27 [13]  Fidelity asserts that certain issues remain between it and LCPI concerning the scope and existence
    of coverage under the Title Insurance Policy, and the potential for future issuance of title insurance, which
    necessitate Fidelity's full reservation of rights as to the Plan.

28

1  of the Properties to one or more Winning Bidders other than the 1st Lien Lenders (but

2  excluding any transfer of a Property to the 1st Lien Lenders pursuant to a credit bid) and

3  including the proceeds from any disposition of the Property by the 1st Lien Lenders or any

4  of their affiliates following their acquisition thereof pursuant to a credit bit, whether such

5  Proceeds are received in a single lump sum or on a piecemeal basis over time, less (a)

6  customary and reasonable costs and expenses of  sale, and (b) Cash and other property

7  used to satisfy any Senior Liens not otherwise satisfied under that certain Title Insurance

8  Policy number 27-44-94-120334 (the "Title Insurance Policy") or the Plan.  For the

9  avoidance of doubt, in the case of such property actually received that consists of

10  promissory notes, equity interests (direct or indirect) in any entities taking title to the

11  Properties and/or other deferred or contingent payment arrangements or mechanisms, the

12  Liquidating Trustee shall be entitled to receive, at the time such promissory notes, equity

13  interests and/or deferred or contingent payment arrangements or mechanisms are

14  received or implemented by the 1st Lien Lenders or their applicable affiliates or principals,

15  a profits participation or similar contractual right to receive the applicable amount

16  representing the Trustee's Participation from all Cash actually received by such entities

17  taking title to each Property from the disposition of such Property and by the Lien Lenders

18  and their applicable affiliates and principals in respect of such promissory notes, which

19  profits participation or similar right shall be provided for in the operating, partnership, or

20  similar governing documents of such entities and in such promissory notes or other

21  deferred or contingent payment documentation (as the case may be), in a form and

22  substance reasonably acceptable to the Liquidating Trustee with the Liquidating Trustee

23  being a direct contracted beneficiary of such provisions with the legal right to contractually

24  enforce same.  The Court shall retain jurisdiction with respect to the determination of the

25  value of any component of the Proceeds.  Without limiting the foregoing, if the 1st Lien

26  Lenders form a joint venture with, or borrow funds from, any party, including any 1st Lien

27  Lender or affiliates of a 1st Lien Lender to obtain funding necessary to develop one or

28  more of the Properties or to maintain and/or operate the Properties prior to any

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel: 714-966-1000  Fax 714-966-1002

1  disposition, the funds required to repay such unaffiliated equity or debt, as the case may

2  be, shall reduce dollar-for-dollar the Proceeds for the applicable Properties.  The 1st Lien

3  Lenders agree to act in good faith to carry out the terms of this paragraph (Section

4  III.E.2.a.iv. of this document) and to effectuate this participation interest of the Liquidating

5  Trustee.

6      The 1st Lien Lenders will, at their sole expense, provide a report and accounting to

7  the Liquidating Trustee or the Liquidating Trustee's successor-in-interest as soon as

8  possible following receipt of Proceeds and shall provide semi-annual financial reports

9  relating to the Properties.  In addition, the 1st Lien Lenders will provide such documents

10 and other information reasonably requested by the Liquidating Trustee or the Liquidating

11 Trustee's successor-in-interest to monitor the 1st Lien Lenders' compliance with this

12 paragraph  (Section III.E.2.a.iv. of this document).  LCPI shall provide the Liquidating

13 Trustee with information reasonably necessary to verify the amount of Proceeds.

14     **v.    Return of Remaining Development Funds**.  With five (5) Business Days of

15 the date that the Debtors transfer title to the last of the Properties such that the Debtors no

16 longer hold title to any of the Properties, the Trustee or the Liquidating Trustee, as the

17 case may be, shall transfer any unused portion of the Remaining Development Funds to

18 LCPI, in its capacity as administrative agent for the 1st Lien Lenders.  The amount of the

19 1st Lien Lenders' Allowed Secured Claim shall be increased by an amount equal to the

20 amount of the Remaining Development Funds transferred to LCPI.

21     **vi.    Treatment of Deficiency Claim**.  The amount of the 1st Lien Lenders' Claim

22 not determined to be a Secured Claim shall be referred to as the "1st Lien Lenders'

23 Unsecured Deficiency Claim" against each of the Debtors, and shall be treated in Classes

24 7(a)-(d) below.

25         b.    Secured Claims Other Than the Secured Claim of the

26               1st Lien Lenders

27     The following chart lists all Classes of Secured Claims, other than the Secured

28 Claim of the 1st Lien Lenders, and their treatment under the Plan:

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| Secured Claims – SunCal Master Estate | | | | |
|---|---|---|---|---|
| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
| 2(a)-(d) | Secured Claim of the 2nd Lien Lenders<br><br>• Collateral: The Properties<br><br>• Priority of Security Interest: Second<br><br>• Total Claim Amount: $85,000,000.00, plus accrued and unpaid interest calculated through September 10, 2008<br><br>• Collateral Value: To be determined upon sale of the Properties. | N | Y | On the Effective Date, the 2nd Lien Lenders will have a Secured Claim only if and to the extent the aggregate Winning Bid(s) for the Properties exceed the amount of the 1st Lien Lenders' Allowed Claim. If and to the extent the 2nd Lien Lenders have an Allowed Secured Claim, they will be paid the allowed amount of such Secured Claim from the sale proceeds on the later of the Effective Date or the close of escrow.<br><br>Based on the fair market value of the Properties and the amount of the 1st Lien Lenders' Allowed Claim, it is expected that the 2nd Lien Lenders are wholly unsecured, and, as such, the 2nd Lien Lenders will not have any Allowed Secured Claim. If as expected the 2nd Lien Lenders do not have an Allowed Secured Claim, then upon the Effective Date, the 2nd Lien Lenders' liens against the Properties and other property of the Debtors and/or the Estates shall be valued at $0.<br><br>On the Effective Date, the liens of the 2nd Lien Lenders on the Properties and other property of the Debtors and/or the Estates shall be released, and title to the Properties will be transferred to the Winning Bidder(s) free and clear of the 2nd Lien Lenders' lien.<br><br>The treatment provided herein shall be in full settlement and satisfaction of the 2nd Lien Lenders' Secured Claim against each of the Debtors.<br><br>The amount of the 2nd Lien Lenders' Claim not determined to be a Secured Claim shall be referred to as the "2nd Lien Lenders' Unsecured Deficiency Claim."<br><br>The 2nd Lien Lenders' Unsecured Deficiency Claim, if any, shall be paid in accordance with the treatment for Classes 8(a)-(d). |
| 3(a)-(d) | Secured Claim of the 3rd Lien Lenders<br><br>• Collateral: The Properties<br><br>• Priority of Security Interest: Third<br><br>• Total Claim Amount: $75,000,000.00, plus | N | Y | On the Effective Date, the 3rd Lien Lenders will have a Secured Claim only if and to the extent the aggregate Winning Bid(s) for the Properties exceed the amount of the 1st Lien Lenders' Allowed Claim and the 2nd Lien Lenders' Allowed Claim. If and to the extent the 3rd Lien Lenders have an Allowed Secured Claim, they will be paid the allowed amount of such Secured Claim from the sale proceeds on the later of the Effective Date or the close of escrow. |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| | Secured Claims – SunCal Master Estate | | | | |
|---|---|---|---|---|---|
| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | | Treatment |
| | accrued and unpaid interest calculated through September 10, 2008 <br><br> • Collateral Value: To be determined upon sale of the Properties. | | | | Based on the fair market value of the Properties and the amount of the 1st Lien Lenders' Allowed Claim and the 2nd Lien Lenders' Allowed Claim, it is expected that the 3rd Lien Lenders are wholly unsecured, and, as such, the 3rd Lien Lenders will not have any Allowed Secured Claim.  If as expected the 3rd Lien Lenders do not have an Allowed Secured Claim, upon the Effective Date, the 3rd Lien Lenders' liens against the Properties and other property of the Debtors and/or the Estates shall be valued at $0. <br><br> On the Effective Date, the liens of the 3rd Lien Lenders on the Properties and other property of the Debtors and/or the Estates shall be released, and title to the Properties will be transferred to the Winning Bidder(s) free and clear of the 3rd Lien Lenders' liens. <br><br> The treatment provided herein shall be in full settlement and satisfaction of the 3rd Lien Lenders' Secured Claim against each of the Debtors. <br><br> The amount of the 3rd Lien Lenders' Claim not determined to be a Secured Claim shall be referred to as the "3rd Lien Lenders' Unsecured Deficiency Claim." <br><br> The 3rd Lien Lenders' Unsecured Deficiency Claim, if any, shall be paid in accordance with the treatment for Classes 8(a)-(d). |
| 4(a)-(d) | Mechanic's Lien Claims <br><br> • Collateral: One or more of the Properties, respectively <br><br> • Priority of Security Interest: Fourth <br><br> • Total Amount of Claims: $46,500,000.00 (est.) <br><br> Collateral Value: To be determined upon sale of the Properties. | N | Y | | Based on the fair market value of the Properties and the amount of the Lien Lenders' Claims, the Holders of mechanic's liens (each a "Mechanic's Lien Claimant" and collectively, the "Mechanic's Lien Claimants") will have a Secured Claim only if and to the extent they establish they hold liens that are senior in priority to the lien of the 1st Lien Lenders under applicable law. <br><br> With respect to each Property, if a Mechanic's Lien Claimant establishes that its lien is senior in priority to the 1st Lien Lenders' lien, then: <br><br> (i) if the Property is sold to a Winning Bidder other than the 1st Lien Lenders, then the Mechanic's Lien Claimant's lien shall attach to the sale proceeds in the same validity, extent, and priority as of the Petition Date, and shall be paid in full, or as otherwise agreed by the Mechanic's Lien Claimant, from such sale proceeds on the on the date that is thirty (30) |

| | Secured Claims – SunCal Master Estate | | | |
|---|---|---|---|---|
| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
| | | | | days following the later of the Effective Date, and the date of entry of a court order allowing the Claim of the Mechanic's Lien Claimant and/or determining that the lien of the Mechanic's Lien Claimant is senior in priority to the 1st Lien Lenders' lien; or |
| | | | | (ii) if the Property is sold to the 1st Lien Lenders by way of credit bid, then the Mechanic's Lien Claimant shall retain its lien on the Property, until the satisfaction the Mechanic's Lien Claimant's Allowed Claim in full, or as otherwise agreed by the Mechanic's Lien Claimant, at which time the lien shall be released and the 1st Lien Lenders shall retain title to the Property free and clear of such lien. |
| | | | | Mechanic's Lien Claimants who are unable to establish that they hold a lien that is senior in priority to the 1st Lien Lenders' lien will be paid in accordance with the treatment afforded to General Unsecured Trade Creditors in Classes 9(a)-(d). |
| | | | | LCPI believes that the 1st Lien Lenders have claims to assert their first priority liens over all other interests asserted in each of the Properties, including any mechanic's liens. LCPI believes that if the 1st Lien Lenders prevail on any such claims, it is likely that any other party asserting an interest in the Properties, including the Mechanic's Lien Claimants, would not be entitled to any recovery from any proceeds from the sale of the Properties. |
| | | | | The treatment provided herein shall be in full settlement and satisfaction of the Secured Claims of the Mechanic's Lien Claimants. |

### 3.    Classes of Priority Unsecured Claims

Certain Priority Claims that are referred to in Bankruptcy Code §§ 507(a)(4), (5), (6), and (7) are required to be placed in Classes. The Bankruptcy Code requires that each Holder of the above Priority Claims receive Cash on the Effective Date equal to the allowed amount of such Claim. However, a Class of unsecured Priority Claim Holders may vote to accept deferred Cash payments of a value, as of the Effective Date, equal to the allowed amount of such Claim.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1    The Trustee does not believe that there are any valid Priority Claims. However, out

2  of an abundance of caution, the following chart lists all Classes containing the Debtors'

3  Bankruptcy Code §§ 507(a)(4), (5), (6), and (7) Priority Claims and their treatment under

4  the Plan:

5

6

| Priority Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 5(a)-(d) | Priority unsecured claims pursuant to 11 U.S.C. §§ 507(a)(6) and (7)<br><br>Estimated total amount of claims: $0.00 | Y | Allowed Priority Unsecured Claims in Classes 5(a)-(d) shall be paid in full, subject to any statutory maximum, in Cash on the later of the following dates: (i) the Effective Date; (ii) the tenth (10th) Business Day after the entry of a Final Order allowing the Priority Claim; and (iii) receipt of sufficient unencumbered funds to pay such Allowed Priority Unsecured Claim. |
| 6(a)-(d) | Priority wage claims pursuant to 11 U.S.C. §§ 507(a)(4) and (5)<br><br>Estimated total amount of claims: $0.00 | Y | Allowed Priority Unsecured Claims in Classes 6 (a)-(d) shall be paid up to the $10,950 statutory maximum, in Cash on the later of the following dates: (i) the Effective Date; (ii) the tenth (10th) Business Day after the entry of a Final Order allowing the Priority Unsecured Claim; and (iii) receipt of sufficient unencumbered funds to pay such Allowed Priority Unsecured Claim.<br><br>Any Allowed Claim amounts in excess of $10,950 will be subject to the treatment afforded the Claims in Classes 9(a)-(d). |

18

19    **4.    Classes of Unsecured Claims**

20    General Unsecured Claims are unsecured Claims that are not entitled to priority

21  under 11 U.S.C. § 507(a) and include the Unsecured Deficiency Claims of the Lien

22  Lenders. Below is a summary of the Plan's treatment of the Classes containing the

23  Debtors' General Unsecured Claims.

24    a.    Unsecured Deficiency Claim of the 1st Lien Lenders

25    Classes 7(a)-(d) consist of the 1st Lien Lenders' Allowed Unsecured Deficiency

26  Claim. The treatment proposed herein shall be in full satisfaction of the 1st Lien Lenders'

27  Allowed Unsecured Deficiency Claim(s) against each of the Debtors.

28

1    i.    <u>Calculation of Unsecured Deficiency Claim</u>.  On the Effective Date, the 1st
2  Lien Lenders shall have an Allowed Unsecured Deficiency Claim in the aggregate amount
3  of the 1st Lien Lenders' Allowed Claim, less the amount of the 1st Lien Lenders' Allowed
4  Secured Claim.

5    ii.    <u>The 50/50 Distribution Scheme</u>.  On each Distribution Date, until the earlier
6  of (a) the payment of all Allowed Unsecured Trade Claims in full; (b) the payment of the
7  Allowed Claims of the Lien Lenders (the "<u>Lien Lender Claims</u>") in full; and (c) the
8  termination of the Amended Term Sheet in accordance with its terms, 50% of any Net
9  Other Recoveries available for distribution shall be paid to LCPI, in its capacity as
10  administrative agent for the 1st Lien Lenders.  The remaining 50% of the Net Other
11  Recoveries available for distribution shall be retained by the Liquidating Trustee free and
12  clear of any liens, Claims, interests or encumbrances to be distributed in accordance with
13  the terms of the Plan and shall be referred to hereinafter as the "<u>Trade Creditor</u>
14  <u>Allocation</u>."  After all Allowed Unsecured Trade Claims are paid in full, on each Distribution
15  Date, any Net Other Recoveries shall be distributed on a *pro rata* basis to the Lien
16  Lenders on account of their Allowed Unsecured Deficiency Claims, subject to the
17  Intercreditor Agreement.

18    iii.    <u>Alternative Distribution Scheme</u>.  To the extent that the Court or other court
19  of competent jurisdiction determines that the Intercreditor Agreement does not require that
20  all Net Other Recoveries must be paid to the 1st Lien Lenders, then, on each Distribution
21  Date, Net Other Recoveries shall be distributed on a *pro rata* basis to the respective
22  administrative agents for the Holders of Allowed Class 8 Unsecured Deficiency Claims
23  and to the Holders of Allowed Class 7 Unsecured Deficiency Claims.  In addition, the 1st
24  Lien Lenders' Allowed Unsecured Deficiency Claim(s) of the 1st Lien Lenders shall be
25  deemed assigned (the "<u>Assigned 1st Lien Lenders' Unsecured Deficiency Claim(s)</u>") to the
26  Liquidating Trustee to the extent necessary to provide the Liquidating Trustee with 50% of
27  the amount of the Net Other Recoveries being distributed.  As a result, on each
28  Distribution Date, the 1st Lien Lenders' Pro Rata Share of the Net Other Recoveries being

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1 distributed shall be retained by the Liquidating Trustee up to 50% of the total amount of

2 Net Other Recoveries being distributed, and any excess shall be distributed to LCPI, in its

3 capacity as administrative agent for the 1st Lien Lenders.  The amount retained by the

4 Liquidating Trustee pursuant to this paragraph shall be retained free and clear of any

5 liens, Claims, interests or encumbrances, and shall be distributed in accordance with the

6 terms of the Plan.  After all Allowed Unsecured Trade Claims are paid in full, any

7 remaining Net Other Recoveries retained on account of the Assigned 1st Lien Lenders'

8 Unsecured Deficiency Claim(s) shall be distributed to LCPI, in its capacity as the

9 administrative agent for the 1st Lien Lenders.

10       iv.   <u>Determination of Distribution Scheme</u>.  Notwithstanding anything herein to

11 the contrary, the Liquidating Trustee shall not distribute any Net Other Recoveries to the

12 Lien Lenders in accordance with this Section, until the Court or other court of competent

13 jurisdiction enters a Final Order determining whether the Intercreditor Agreement requires

14 that, among the Lien Lenders, all Net Other Recoveries must be paid to the 1st Lien

15 Lenders.  Within a reasonable time following the Liquidating Trustee's receipt of any Net

16 Other Recoveries, the Liquidating Trustee will interplead fifty percent (50%) of the Net

17 Other Recoveries to be distributed (the "<u>Interpled Funds</u>") with the Court for a

18 determination of the Lien Lenders' rights under the Intercreditor Agreement with respect to

19 the Interplead Funds.  Nothing herein prevents the Lien Lenders from seeking an earlier

20 adjudication of their rights under the Intercreditor Agreement with respect to any Net Other

21 Recoveries from the Court or other court of competent jurisdiction.

22       b.   <u>Unsecured Claims Other Than the Unsecured</u>

23         <u>Deficiency Claim of the 1st Lien Lenders</u>

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 8(a)-(d) | Contractually Subordinated Unsecured Deficiency Claims of the 2nd Lien Lenders and the 3rd Lien Lenders <br><br> Estimated total amount of | Y | Classes 8(a)-(d) consist of the 2nd Lien Lenders' Unsecured Deficiency Claim and the 3rd Lien Lenders' Unsecured Deficiency Claim. <br><br> The Holders of Allowed Class 8 Unsecured Deficiency Claims shall not receive any Distributions on account of such Claims; |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

| | General Unsecured Claims | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | claims: $160,000,000.00, plus accrued and unpaid interest calculated through September 10, 2008 | | provided, however, to the extent that the Court or other court of competent jurisdiction determines, as provided in Section III.E.4.a.iv. above, that the Intercreditor Agreement does not require that all Net Other Recoveries must be paid to the 1st Lien Lenders, then Net Other Recoveries shall be distributed on a pro rata basis to the Holders of Allowed Class 8 Unsecured Deficiency Claims and to the Holders of Allowed Class 7 Unsecured Deficiency Claims, as follows: On each Distribution Date, the administrative agent for the 2nd Lien Lenders will receive for the benefit of the 2nd Lien Lenders the 2nd Lien Lenders' Pro Rata Share of the Net Other Recoveries being distributed, less the amounts discussed in paragraph (ii) immediately below, and the administrative agent for the 3rd Lien Lenders will receive for the benefit of the 3rd Lien Lenders the 3rd Lien Lenders' Pro Rata Share of the Net Other Recoveries being distributed, less the amounts discussed in paragraph (ii) immediately below; and The Allowed 2nd Lien Lender Unsecured Deficiency Claim of LCPI (the "Assigned LCPI 2nd Lien Lender Unsecured Deficiency Claim") and the Allowed 3rd Lien Lender Unsecured Deficiency Claim of LCPI (the "Assigned LCPI 3rd Lien Lender Unsecured Deficiency Claim") shall be deemed assigned to the Liquidating Trustee to the extent that the Assigned 1st Lien Lenders' Unsecured Deficiency Claim(s) did not provide the Liquidating Trustee 50% of the amount of the Net Other Recoveries being distributed.  On each Distribution Date, (1) the amount of the 2nd Lien Lenders' Pro Rata Share of the Net Other Recoveries attributable to the Assigned LCPI 2nd Lien Lender Unsecured Deficiency Claim, and (2) the amount of the 3rd Lien Lenders' Pro Rata Share of the Net Other Recoveries attributable to the Assigned 3rd Lien Lender Unsecured Deficiency Claim shall be retained by the Liquidating Trustee up to the point that 50% of the total amount of Net Other Recoveries being distributed has been retained by the Liquidating Trustee, and any excess shall be distributed to LCPI.  The amount retained by the Liquidating Trustee pursuant to this paragraph shall be retained free and clear of any liens, Claims, interests or encumbrances, and shall be distributed in accordance with the terms of the Plan. Notwithstanding the foregoing, after all Allowed |

| General Unsecured Claims | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | | | Unsecured Trade Claims are paid in full, any remaining Net Other Recoveries retained on account of the Assigned LCPI 2nd Lien Lender Unsecured Deficiency Claim or on account of the Assigned LCPI 3rd Lien Lender Unsecured Deficiency Claim shall be distributed to LCPI.

The treatment proposed herein shall be in full satisfaction of the 2nd Lien Lenders' Unsecured Deficiency Claim and the 3rd Lien Lenders' Unsecured Deficiency Claim against each of the Debtors. |
| 9(a)-(d) | Unsecured Trade Claims, which includes any Bond Indemnification Claims

Estimated total amount of claims: $60,000,000.00 (est.) | Y | Class 9 is four (4) separate Classes, one Class of General Unsecured Trade Claims against each Debtor. For avoidance of doubt, any Bond Indemnification Claims are treated in Classes 9(a)-(d) and are considered Unsecured Trade Claims. Any Distributions made to the Holders of Allowed Unsecured Trade Claims will be on a consolidated basis. However, for purposes of voting, each Class of General Unsecured Trade Claims will be considered separately.

On each Distribution Date, the Holders of Allowed Unsecured Trade Claims will receive their respective Pro Rata Shares from Available Cash.

The treatment proposed herein shall be in full satisfaction of the Allowed Unsecured Trade Claims. |

### 5.    Class of Interest Holders

Interest holders are the parties who hold membership Interests (*i.e.*, equity interests) in the Debtors. Each Debtor is a Delaware limited liability company in which the owners hold Membership Interests. The following chart identifies the Plan's treatment of the Class of Interest Holders.

| Interest Holders | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| 10(a)-(d) | Interest Holders | Y | On the Effective Date, all existing membership Interests in each Debtor will be cancelled, annulled, and extinguished. No distribution of any kind will be made on account of any existing membership Interests. |

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

554618.1

54

FIRST AMENDED
DISCLOSURE STATEMENT

| Interest Holders | | | |
|---|---|---|---|
| Class # | Description | Impaired (Y/N) | Treatment |
| | | | |

## F.   **Means of Effectuating the Plan**

This Section is intended to explain how the Trustee intends to effectuate the liquidation contemplated by the Plan, and how the Trustee intends to fund the obligations to Holders of Allowed Claims as provided in the Plan.  This Section provides information regarding the funding sources for Plan obligations, the establishment of the Liquidating Trust, and other material issues bearing upon performance of the Plan, such as the sale of the Properties.  The Plan will be effectuated through the sale of the Properties, and the vesting of all other Assets, including, but not limited to, any Avoidance Actions and other Causes of Action, in the Liquidating Trust to be managed and administered by the Liquidating Trustee.

### 1.     **The Sale of the Properties**

#### a.     The Auction

Under the Plan, each Property will be sold by auction (the "Auction") to the 1st Lien Lenders and/or one or more third parties in accordance with and subject to the overbid procedures to be provided and approved by the Court and attached hereto as Exhibit "6" (the "Overbid Procedures").  The 1st Lien Lenders acting collectively shall be the initial bidder with respect to each of the Properties.  As further discussed in Section III.E.2.a. above and the Overbid Procedures, the 1st Lien Lenders' initial aggregate credit bid for all the Properties taken together shall be in the amount of the Aggregate Minimum Credit Bid Amount (*i.e.*, $45,000,000.00), which amount the Trustee believes is reasonable in light of the highest cash offer received by the Trustee, and, with respect to each Property, the 1st Lien Lenders shall be entitled to increase their credit bid to an amount in excess of the highest competing bid for such Property, if any, up to the Allocated Maximum Credit Bid Amount for the Property.  Any party wishing to submit a competing bid and participate in

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002