RONALD RUS, #67369
rrus@rusmiliband.com
JOEL S. MILIBAND, #77438
jmiliband@rusmiliband.com
CATHRINE M. CASTALDI, #156089
ccastaldi@rusmiliband.com
STEPHEN R. COOK, #204446
scook@rusmiliband.com
RUS, MILIBAND & SMITH
A Professional Corporation
Seventh Floor
2211 Michelson Drive
Irvine, California 92612
Telephone:   (949) 752-7100
Facsimile:   (949) 252-1514

Attorneys for Creditor,
SunCal Management, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | CASE NO. 8:08-bk-15588-ES |
| LBREP/L-SunCal Master I LLC, et al., | Chapter 11 |
| Debtor. | (Jointly Administered with Case Nos. 8:08-bk-15637-ES; 8:08-bk-15639-ES; and 8:08-bk-15640-ES) |

Affects:

☒  All Debtors

☐  LBREP/L-SunCal Master I LLC

☐  LBREP/L-SunCal McAllister Ranch LLC

☐  LBREP/L-SunCal McSweeny Farms LLC

☐  LBREP/L-SunCal Summerwind Ranch, LLC

**OBJECTION OF SUNCAL MANAGEMENT, LLC, TO FIRST AMENDED CHAPTER 11 PLAN (DATED JANUARY 7, 2011);**

JUDGE:      Hon. Erithe A. Smith
DATE:       April 8, 2011 and April 22, 2011
TIME:       10:30 a.m.
CRTRM.:    Courtroom 5A
               411 West Fourth Street
               Santa Ana, California 92701

TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY COURT

JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE TRUSTEE, DEBTORS,

THE OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS AND

THEIR COUNSEL OF RECORD:

# TABLE OF CONTENTS

**Page**

1.  PRELIMINARY STATEMENT ................................................................................ 2

2.  THE PLAN IS PREDICATED ON A *DE FACTO* SUBSTANTIVE
    CONSOLIDATION OF THE DEBTORS .......................................................... 3

3.  THE PLAN FAILS TO SATISFY EACH OF THE CONFIRMATION
    REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE ..................... 6

    A.  The Plan Proposes Treatment Of Claims That Is Forbidden By Law ..................... 6

        (1)  The Plan Is Not Proposed In Good Faith As It Attempts To
             Gerrymander An Impaired Consenting Class. .............................................. 7

        (2)  The Plan Violates California Anti-Deficiency Statutes ................................ 8

    B.  The Plan Fails To Meet The "Best Interest Of Creditors Test" Under 11
        U.S.C. § 1129(a)(7) ................................................................................ 9

    C.  The Plan Does Not Meet Cram-Down Requirements ........................................... 11

    D.  The Plan Is Not Feasible ................................................................................ 13

    E.  The Plan Inappropriately Limits Liability In Excess Of The Safe Harbor
        Provisions Of Section 1125(e) Of The Bankruptcy Code. ..................................... 18

4.  CONCLUSION .............................................................................................. 19

REQUEST FOR JUDICIAL NOTICE .......................................................................... 20

1

2

# **TABLE OF AUTHORITIES**

3                                                                                                                   **Page(s)**

**FEDERAL CASES**

4

5
*Everett v. Perez (In re Perez)*,
    30 F.3d 1209 (9th Cir. 1994) ................................................................. 6

6
*Financial Sec. Assurance Inc. v. T-H New Orleans L.P. (In re T-H New Orleans L.P.)*,
    116 F.3d 790 (5th Cir. 1997) ................................................................. 6

7

8
*In re Acequia*,
    787 F.2d 1352 (9th Cir. 1986) ............................................................... 13

9

10
*In re Ambanc La Mesa Limited Partnership*,
    115 F.3d 650 (9th Cir. 1997) ............................................................. 7, 11

11
*In re Augie/Restivo Baking Co.*,
    860 F.2d 515 (2nd Cir. 1988) .............................................................. 4, 5

12

13
*In re Barakat*,
    99 F.3d 1520 (9th Cir. 1996) ................................................................. 7

14

15
*In re Baseline-Dobson Center*,
    193 B.R. 284 (Bankr. D. Ariz. 1994) ..................................................... 7

16
*In re Bonham*,
    229 F.3d 750 (9th Cir. 2002) ............................................................... 4, 5

17

18
*In re Central European Industrial Devt. Co.*,
    299 B.R. 572 (Bankr. N. D. Cal. 2003) ................................................. 5

19

20
*In re Continental Vending Machine Corp.*,
    517 F.2d 997 (2d Cir. 1975), cert denied sub nom,
    *James Talcott, Inc. v. Wharton*, 424 U.S. 913 (1976) .......................... 5

21

22
*In re First Magnus Fin. Corp.*, 208 WL 450447 at *6
    (Bankr. D. Ariz. Feb. 15, 2008) ........................................................... 11

23

24
*In re Flora Mir Candy Corp.*,
    432 F.2d 1060 (2d Cir. 1970) ................................................................. 5

25
*In re Global Ocean Carriers Ltd.*,
    251 B.R. 31 (Bankr. D. Del. 2000) ..................................................... 6, 10

26

27
*In re Granite Broadcasting Corp.*,
    369 B.R. 120 (Bankr. S.D.N.Y. 2007) ................................................... 6

28

*In re Hoffman,*
   52 B.R. 212 (Bankr. D.ND. 1985) ............................................................ 12

*In re Johns-Manville Corp.,*
   843 F.2d 636 (2d Cir. 1988) ...................................................................... 6

*In re JTS Corp.,*
   617 F.3d 1102 (9th Cir. 2010) .................................................................. 17

*In re MCorp Fin., Inc.,*
   137 B.R. 219 (Bankr. S.D. Tex) ............................................................... 10

*In re Montclair Retail Center,*
   177 B.R. 663 (9th Cir. BAP 1995) ............................................................. 7

*In re Owens Corning,*
   419 F.3d 195 (3d Cir. 2005) ....................................................................... 5

*In re Rusty Jones, Inc.,*
   110 B.R. 362 (Bankr. N.D. Ill 1990) ........................................................ 10

*In re Sylmar Plaza, L.P.,*
   314 F.3d 1070 (9th Cir. 2002) .................................................................... 6

*In re Trevarrow Lanes, Inc.,*
   183 B.R. 475 (Bankr. E.D. Mich 1995) ................................................ 6, 10

*In re Zaleha,*
   162 B.R. 309 (Bankr. D. Idaho 1993) ........................................................ 6

*Liberty Nat'l Enters v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship),*
   115 F.3d 650 (9th Cir. 1997) .................................................................... 11

*S&P, Inc. v. Pfeifer,*
   189 B.R. 173 (N.D. Ind. 1995), *aff'd,* 78 F.3d 587 (7th Cir. 1996) ......... 13

STATE CASES

*Gackstetter v. Frawley,*
   135 Cal.App. 4th 1257 (2006) ................................................................ 18

*May v. Miller,*
   228 Cal.App.3d 404, 278 Cal.Rptr. 341 (1991) ...................................... 17

*McCrae v. Craig*
   (1863) 23 C. 522 .......................................................................................... 12

*Tech-Built, Inc. v. Woodward-Clyde & Assoc.,*
   38 Cal. 3d 488. (1985) ............................................................................... 17

*Westfour Corporation v. California First Bank,*
    3 Cal.App.4th 1610, 5 Cal.Rptr.2d 394 (1992) ............................................................ 12

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

11 U.S.C. § 1122 ........................................................................................................................ 7

11 U.S.C. § 1125 ......................................................................................................... 3, 18, 19

11 U.S.C. § 1129(a) .................................................................... 2, 6, 7, 8, 9, 11, 13

11 U.S.C. § 1129(b) ........................................................................................................ 3, 11

28 U.S.C. § 959 ........................................................................................................................ 8

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Cal. Code Civ.Proc. § 580d ................................................................................................ 3, 8

Cal. Code Civ. Proc. § 726 ...................................................................................................... 8

Cal. Code Civ. Proc. § 877 ................................................................................................... 17

Cal. Code Civ. Proc. § 3134 ............................................................................................... 12

California Constitution ............................................................................................................ 12

**OTHER AUTHORITIES**

7 Collier on Bankruptcy ¶f1129.03[7] [b] (15th rev. ed. 2009) ..................................... 9

1    SunCal Management, LLC ("SC Management"), unsecured creditor and administrative

2  priority claimant of the jointly administered debtors (collectively the "Debtors" or the "Estates"),

3  submits this objection (the "Objection") to the First Amended Chapter 11 Plan (Dated January 7,

4  2011) (the "Plan") filed by Alfred H. Siegel, the chapter 11 trustee (the "Trustee") of the jointly

5  administered estates of LBREP/L-SunCal Master I LLC (the "Parent Debtor"), and

6  LBREP/L-SunCal McAllister Ranch LLC, LBREP/L-SunCal McSweeny Farms LLC, and

7  LBREP/L-SunCal Summerwind Ranch LLC (collectively the "Subsidiary Debtors").  In support of

8  this Objection, SC Management respectfully represents as follows:

9  1.    PRELIMINARY STATEMENT

10        The Plan proposed by the Trustee is the culmination of an administrative strategy in these

11  chapter 11 bankruptcy cases, which has ignored the separate status of the Debtors.  The Plan

12  favors expediency over fairness, resulting in a Plan that improperly substantively consolidates the

13  Parent Debtor with the Subsidiary Debtors without adherence to the profound impact such

14  consolidation can, and does, have on the rights of creditors.

15        The Trustee cannot meet his burden of establishing that each of the requirements for

16  confirmation of a plan set forth in section 1129 of the Bankruptcy Code is satisfied  as to each of

17  the Debtors.  As set forth more fully below, the Plan fails to meet the requirements for

18  confirmation in the following respects:

19          •    The Plan violates Section 1129(a)(3) of Title 11 of the United States Code

20               (the "Bankruptcy Code"), which  provides that a plan must be "proposed in

21               good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).

22          •    The Plan improperly attempts to gerrymander the unsecured deficiency

23               claim of Lehman Commercial Paper Inc. and the First Lien Lenders[1]

24               (collectively, "LCPI") to create a consenting impaired class for purposes of

25               a likely cram-down.

26  _____

27    [1] For purposes of this pleading, capitalized terms used shall have the meaning set forth in the Plan, unless
otherwise specified.

28

1    • The Plan runs afoul of a well-recognized body of anti-deficiency law that

2    prevent lenders, such as LCPI, from obtaining deficiency judgment through

3    nonjudicial foreclosure. Cal. Code Civ.Proc. § 580d.

4    • The Plan improperly impairs the rights of Mechanic's Lien Claimants.

5    • The Plan does not meet the best interest of creditors test.

6    • The Plan fails to meet the cram-down requirements of section 1129(b) of

7    the Bankruptcy Code because it does not provide fair and equitable

8    treatment to creditors who vote against the Plan.

9    • The Plan is not feasible.

10    • The Plan's releases exceed the Safe Harbor provisions of section 1125(e) of

11    the Bankruptcy Code.

12    The Plan is unconfirmable and further denies creditors the protections and benefits of a chapter 7

13    liquidation. For the reasons set forth below, SC Management requests that the Court deny

14    confirmation of the Plan and convert these cases for administration under chapter 7.

15    2.    THE PLAN IS PREDICATED ON A *DE FACTO* SUBSTANTIVE CONSOLIDATION

16    OF THE DEBTORS

17    While the Trustee disclaims that he is requesting a substantive consolidation of the

18    Debtors' estates, the evidence set forth in the Plan is to the contrary. The Plan effectuates a *sub*

19    *rosa* substantive consolidation without meeting or attempting to meet any of the grounds required

20    for substantive consolidation. Certain elements of the Plan are unworkable without substantive

21    consolidation, or appear to assume a *de facto* substantive consolidation. For example:

22    • "On the Effective Date, each of the Debtors shall be deemed dissolved for

23    all purposes without the necessity for any other or further actions to be

24    taken by or on behalf of the Debtors or payments to be made in connection

25    therewith."[2]

26

27    _____

[2] See the Plan at page 24, lines 26-28.

28

1    •    "All other assets of the Debtors' Estates will be transferred to the liquidating

2         trust (the 'Liquidating Trustee') established on the Effective Date of the

3         Plan."[3]

4    •    The Plan does not appear to contemplate the repayment of existing

5         intercompany obligations; the Plan effectively ignores such obligations in

6         the allocation of value among the estates.

7    •    The Plan states that "[o]n the Effective Date, the 1st Lien Lenders shall have

8         an Allowed Unsecured Deficiency Claim in the aggregate amount of the 1st

9         Lien Lenders' Allowed Claim[4], less the amount of the 1st Lien Lenders'

10        Allowed Secured Claim."[5]

11   The Plan substantively consolidates the Debtors in that "Allowed General Unsecured Trade

12   Claims against each Estate will receive periodic Distributions from Available Cash on a

13   consolidated basis" and further pays all administrative claims from a $3.5 million allowance from

14   the Development Funds.[6]  Moreover, the consolidated treatment of claims is further evidenced by

15   the provision that the Plan supersedes any agreements or rights that holders have against the

16   individual debtors.[7]

17        The Ninth Circuit set forth the legal standard for substantive consolidation in *In re*

18   *Bonham*, 229 F.3d 750 (9th Cir. 2002).  This case adopts the exacting substantive consolidation test

19   set forth by the Second Circuit in *In re Augie/Restivo Baking Co.*, 860 F.2d 515 (2nd Cir. 1988).

20   Substantive consolidation is an extraordinary remedy that vitally affects the substantive rights of

21   the parties and may result in unfair treatment of creditors.  Thus, because "the primary purpose of

22   substantive consolidation is to 'insure the equitable treatment of all creditors,'" the Ninth Circuit

23

24       [3] See the Plan at page 2, lines 18-19.

    [4] The Disclosure Statement defines the "1st Lien Lenders Allowed Claim in the aggregate amount of
25   $230,006,233.98, plus accrued and unpaid interest calculated through September 10, 2008, and accrued and unpaid
legal fees."  See the Disclosure Statement at page 92, lines 6-8.

26       [5] See the Plan at page 18, lines 13-17.

    [6] See Disclosure Statement at page 31, lines 12-13 [Emphasis in original].
27
    [7] See Disclosure Statement at page 31, lines 20-24.
28

1  has emphasized that "[r]esort to consolidation ...should not be Pavlovian" and substantive

2  consolidation should be used only "sparingly." *Bonham*, 229 F.3d 750 (citing *Augie/Restivo*, 860

3  F.2d 515 at 519 and *In re Flora Mir Candy Corp.*, 432 F.2d 1060, 1062-1063 (2d Cir. 1970).

4  Substantive consolidation should be used sparingly "because of the possibility of unfair treatment

5  of creditors who have dealt solely with the corporation having a surplus as opposed to those who

6  have dealt with the related entities with deficiencies." *In re Continental Vending Machine Corp.*,

7  517 F.2d 997, 1001 (2d Cir. 1975), cert denied sub nom, *James Talcott, Inc. v. Wharton*, 424 U.S.

8  913 (1976); see also, *Augie/Restivo*, 860 F.2d at 518.

9       Here, there is no evidence that creditors of the individual debtors were looking to anyone

10  other than the contracting debtor for repayment of claims.  Moreover, there is no indication that

11  the interests of the Subsidiary Debtors' Estates are being treated fairly and equitably in the context

12  of this substantive consolidation, since the Subsidiary Debtors' Estates likely have claims against

13  the Parent Debtor related to the conduct of LCPI and the Parent Debtor in granting security

14  interests in the Real Properties without providing a corresponding benefit in exchange for those

15  obligations.

16       Given the potential of substantive consolidation to negatively and, in many cases, unfairly

17  impact the rights of creditors, the Ninth Circuit has determined that substantive consolidation is

18  only appropriate where: "(i) creditors dealt with the entities as a single economic unit and did not

19  rely on their separate identity in extending credit; or (ii) the affairs of the debtors are so entangled

20  that consolidation will benefit all creditors." *Bonham*, 229 F.3d at 766 (quoting *Augie/Restivo*,

21  860 F.2d at 518 (internal citations omitted); accord *In re Central European Industrial Devt. Co.*,

22  299 B.R. 572, 572 (Bankr. N. D. Cal. 2003).  Consequently, "[p]roponents of substantive

23  consolidation have the burden of showing one or the other rationale for consolidation." *In re

24  Owens Corning*, 419 F.3d 195, 212 (3d Cir. 2005).  Here, the Trustee cannot support either

25  rationale.  Accordingly, to the extent that the Plan presupposes or requires partial substantive

26  consolidation, the Plan cannot be implemented and is unconfirmable.

27  / / /

28  / / /

3.    THE PLAN FAILS TO SATISFY EACH OF THE CONFIRMATION REQUIREMENTS
OF SECTION 1129 OF THE BANKRUPTCY CODE

As the Plan Proponent, the Trustee has the burden of establishing that each of the requirements for confirmation of a plan set forth in section 1129 of the Bankruptcy Code is satisfied as to each Debtor. *See, In re Global Ocean Carriers Ltd.,* 251 B.R. 31 (Bankr. D. Del. 2000); *In re Trevarrow Lanes, Inc.,* 183 B.R. 475 (Bankr. E.D. Mich 1995); *In re Zaleha,* 162 B.R. 309 (Bankr. D. Idaho 1993). If the Trustee fails to meet this burden with respect to any of these requirements, confirmation must be denied. Moreover, the Plan hinges on certain critical, interrelated mechanisms to make the Plan feasible. Thus, if the Plan is unconfirmable as to any of the Debtors, it is unconfirmable as to all of them.

A.    The Plan Proposes Treatment Of Claims That Is Forbidden By Law

Section 1129(a)(3) of the Bankruptcy Code provides that a plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Courts have construed this standard as requiring a showing that "the plan [was] proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *In re Johns-Manville Corp.,* 843 F.2d 636, 649 (2d Cir. 1988). The most important analysis is of the plan itself and whether its results will be consistent with the Bankruptcy Code and its objectives and purposes. *In re Sylmar Plaza, L.P.,* 314 F.3d 1070, 1074 (9th Cir. 2002) (good faith determination is based on "the totality of the circumstances"); *In re Granite Broadcasting Corp.,* 369 B.R. 120, 128 (Bankr. S.D.N.Y. 2007). As Plan proponent, the Trustee carries the burdens of proof and persuasion that the Plan was proposed in good faith and does not violate applicable law. *See, Financial Sec. Assurance Inc. v. T-H New Orleans L.P. (In re T-H New Orleans L.P.),* 116 F.3d 790, 802 (5th Cir. 1997). Indeed, "[t]he burden of proposing a plan that satisfies the requirements of the [Bankruptcy] Code always falls on the party proposing it, but it falls particularly heavily on the debtor-in-possession or trustee since they stand in a fiduciary relationship to the estate's creditors." *Everett v. Perez (In re Perez),* 30 F.3d 1209, 1214 n.5 (9th Cir. 1994). Here, the Trustee cannot meet that burden.

/ / /

/ / /

1        (1)   The Plan Is Not Proposed In Good Faith As It Attempts To Gerrymander

2                An Impaired Consenting Class.

3        A plan that attempts to gerrymander a consenting impaired class – in this case Class 7(a)-

4 (d) (Unsecured Deficiency Claims of LCPI) – is not proposed in good faith.  Section 1122 of the

5 Bankruptcy Code  governs classification of claims and provides that, generally, "a proposed plan

6 may place a claim or an interest in a particular class only if such claim or interest is *substantially*

7 *similar* to the other claims or interests of such class."  11 U.S.C. § 1122 (emphasis added).  Here,

8 the classification scheme set forth in the Plan whereby the Unsecured Deficiency Claims of the 1st

9 Lien Lenders (Classes 7(a)-(d)) are separately classified from those of the 2nd Lien Lenders and

10 the 3rd Lien lenders (Classes 8(a)-(d)) without any rational justification.

11        Section 1129(b)(1) prohibits unfair discrimination and requires that a plan be fair and

12 equitable with respect to each impaired, non-consenting class; there must be reasonable,

13 nondiscriminatory reasons for separate classification of claims; *In re Ambanc La Mesa Limited*

14 *Partnership,* 115 F.3d 650, 656 (9th Cir. 1997) ("separate classification for the purpose of

15 securing an impaired consenting class under §1129(a)(10) is improper").  The Ninth Circuit has

16 made clear that, absent a "legitimate business or economic justification," it is impermissible for a

17 debtor to separately classify substantially similar general unsecured claims.  *See also, In re*

18 *Barakat,* 99 F.3d 1520, 1526 (9th Cir. 1996).  The burden is on the plan proponent to articulate a

19 valid business or economic justification.  *In re Montclair Retail Center,* 177 B.R. 663 (9th Cir.

20 BAP 1995).  "[T]he reasons for different treatment and separate classification must be closely

21 scrutinized."  *In re Baseline-Dobson Center,* 193 B.R. 284, 290 (Bankr. D. Ariz. 1994) (citing *In*

22 *re Acequia,* 787 F.2d 1352, 1364 (9th Cir. 1986).

23        Since the Trustee has not offered a rational justification for separately classifying the LCPI

24 deficiency claim, it appears that the Trustee proposed this separate classification for an improper

25 purpose.  The attempt to gerrymander the LCPI unsecured deficiency claims should further fail

26 because LCPI and the 1st Lien Lenders are insiders.  LCPI and the 1st Lien Lenders are described

27 throughout the Plan as secured creditors.  This description is incomplete, as it fails to address the

28 fact that LCPI and the 1st Lien Lenders are "insiders."  LCPI's insider status invalidates their votes

1  for purposes of 11 U.S.C. § 1129(a)(10), which means that the Trustee can only confirm his Plan

2  if an impaired class votes in favor of the Plan without considering the votes of LCPI and its related

3  entities. Presumably, LCPI will contend that it is not an insider, but the Trustee bears the burden

4  of proof in establishing every element necessary for confirmation of the Plans.

5     (2) The Plan Violates California Anti-Deficiency Statutes

6    The Plan runs afoul of a well-recognized body of anti-deficiency laws that prevent lenders,

7  such as LCPI, from obtaining deficiency judgment through nonjudicial foreclosure. Cal. Code

8  Civ.Proc. § 580d. The only means through which a lender can obtain recovery on a deficiency is

9  through the procedure set forth in Section 726(a) of the California Code of Civil Procedure.

10 Application of this procedure would require a trial to determine the appropriate valuation for the

11 properties, and would further afford the Debtors with a right to reacquire the properties at any time

12 during the next year, if a deficiency were granted. Cal. Code Civ. Proc. § 726(e).

13   The Plan bypasses these protections by proposing to transfer all of the Debtors' real

14 properties to LCPI, or its designee, while concurrently gifting to LCPI the equivalent of deficiency

15 claims against the estates based upon the differences between the amount LCPI chooses to credit

16 bid for the real properties. The Plan purports to allow LCPI a senior priority secured claim in the

17 amount of $230 million against each Debtor, and requires a minimum credit bid of $45 million up

18 to maximum credit bid of $70 million. Thus, the Plan proposes a likely deficiency claim for

19 LCPI's benefit in a range between $160 million to in excess of $200 million without adhering to

20 the California laws that provide protections for Debtors in these circumstances. Notably, no other

21 secured creditor is granted the right to act in derogation of California's anti-deficiency statutes.

22 The Plan impermissibly violates the anti-deficiency statutes and affords LCPI with treatment that

23 is contrary to Bankruptcy Code provisions. The proposed Liquidating Trustee must comply with

24 local law pursuant to 28 U.S.C. § 959,[8] including the California deficiency statutes. The

25

26   [8] Pursuant to 28 U.S.C. § 959, "a trustee, receiver or manager appointed in any case pending in any court of the
United States, including a debtor in possession, shall manage and operate the property in his possession as such

27 trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is
located, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

28

1  provisions of the Plan concerning LCPI's sharing in any distribution to unsecured creditors are an

2  attempt to evade the fundamental protections of California foreclosure law, as well as being

3  extremely unfair to all creditors other than LCPI.

4        Here, the Plan provides, in contravention of California Law, for the establishment of an

5  Unsecured Deficiency Claim[9] after the transfer of all of the real properties to LCPI.  While

6  ostensibly, the Plan requires that LCPI credit bid to obtain the properties, LCPI has substantial

7  controls over the marketing and sale of the properties, as well as the bidding due to its agreement

8  with the Trustee regarding the credit bid of its alleged secured claim.  As set forth above, the

9  Trustee must comply with local law in proposing its plan, including the laws related to foreclosure

10 and the establishment of any deficiency claims.  The proposed Plan violates California law and

11 thereby is not proposed in good faith.

12       B.    The Plan Fails To Meet The "Best Interest Of Creditors Test" Under 11 U.S.C.

13             § 1129(a)(7)

14       One of the requirements for plan confirmation is that every creditor must either have voted

15 to accept the plan or will receive at least as much under the plan as it would in a chapter 7

16 liquidation.  11 U.S.C. § 1129(a)(7).  This is commonly known as the "best interest of creditors

17 test."  Section 1129(a)(7) provides that a Plan can only be confirmed if, "[w]ith respect to each

18 impaired class of claims or interests… each holder of a claim or interest of such class" either

19 "accepted the plan" or:

20            "Will receive or retain under the plan on account of such claim or
             interest property of a value, as of the effective date of the plan, that
21           is not less than the amount that such holder would so receive or
             retain if the debtor were liquidated under chapter 7 of this title on
22           such date."

23 11 U.S.C. § 1129(a)(7)(A).  The best interests test is based on a hypothetical liquidation.  7 Collier

24 on Bankruptcy ¶f1129.03[7] [b] (15th rev. ed. 2009) ("This means that, absent consent, a creditor

25 / / /

26

27 _____

   [9] See the Disclosure Statement at page 41, lines 20-23.
28

1  or interest holder must receive property that has a present value equal to that participant's

2  hypothetical chapter 7 distribution.")

3          As with every other affirmative aspect of the plan confirmation requirements, the plan

4  proponents have the burden of establishing that the best interests of creditors test is satisfied. *See*

5  *e.g., Global Ocean Carriers*, 251 B.R. at 46; *Trevarrow Lanes*, 183 B.R., at 479.  In this case, the

6  Trustee merely states that "in either a chapter 7 liquidation or under the Plan, the distribution

7  would be the same."[10]  Such statement ignores that LCPI would not be entitled to any deficiency

8  claim in a chapter 7 liquidation, but would instead find their claim limited to the value of the real

9  properties owned by the Property Debtors.  The Trustee's mere assertion that the distribution

10  would be the same in either a chapter 7 liquidation or under the Plan is insufficient to carry the

11  Trustee's burden as to the best interests of creditors.

12          The Trustee posits that a distribution under the Plan is better for unsecured creditors

13  because "a portion of the net recoveries from Avoidance Actions or other Causes of Action that

14  would otherwise be distributed to the 1st Lien Lenders and/or LCPI on account of their allowed

15  Unsecured Deficiency Claims is being paid to the Holders of Allowed Unsecured Trade Claims."[11]

16  This analysis is faulty in that is assumes that LCPI is entitled to an unsecured deficiency claim in

17  violation of California law.

18          The proposed liquidation analysis further fails to account for what result would be

19  achieved from a proposed distribution under a chapter 7 liquidation, or a plan, where LCPI would

20  not be entitled to an unsecured deficiency claim, thereby significantly altering the distribution of

21  funds to unsecured creditors.  A Trustee proposing a chapter 11 plan cannot satisfy his burden in

22  respect of the best interests of creditors test unless it presents plausible competent evidence

23  meeting the test, which the Trustee has failed to do.  *See, e.g., In re Rusty Jones, Inc.*, 110 B.R.

24  362, 373-74 (Bankr. N.D. Ill 1990).  Assertions and questionable assumptions underlying the ...

25  projections and best interest of creditors analysis are insufficient. *See In re MCorp Fin., Inc.*, 137

26

27          [10] See Disclosure Statement at page 76, lines 9-13.

          [11] See Disclosure Statement at page 76, lines 13-16.

28

1   B.R. 219, 228-229 (Bankr. S.D. Tex) (hypothetical liquidation analysis must be based on

2   "sufficient substantive evidence" and not merely assumptions in order to meet the best interests of

3   creditors test).  Here, the Trustee has merely asserted, erroneously, that the outcome for creditors

4   would be the same whether the Debtors were liquidated pursuant to chapter 7 or chapter 11.

5   Accordingly, the Trustee has not satisfied his burden, and confirmation should be denied.

6          C.    The Plan Does Not Meet Cram-Down Requirements

7          For a plan to be confirmed, all 13 requirements of section 1129(a) of the Bankruptcy Code

8   must be satisfied.  However, if section 1129(a)(8) is left unsatisfied – because a class of impaired

9   claims has not accepted the plan – a plan may nonetheless be confirmed if the cram-down

10  requirements of section 1129(b) are met with respect to such class.  *See* 11 U.S.C. §1129(b).  The

11  cram-down requirements dictate that the plan (a) treat each objecting impaired class fairly and

12  equitably, and (b) not discriminate unfairly as to any objecting impaired class.  *Id, see also,*

13  *Liberty Nat'l Enters v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d

14  650, 653 (9th Cir. 1997).  Here, the Court has required the parties file their objections to plan

15  confirmation in advance of a tabulation of the votes.  This opposition presumes that the only

16  consenting impaired class will be the improperly gerrymandered Class 7(a)-(d) claims, which are

17  solely comprised of the claims of LCPI, which because of its insider status cannot qualify as a

18  consenting impaired class.

19         Unfair discrimination is a concept that applies to whether a plan properly treats claims or

20  interests differentially.  *In re First Magnus Fin. Corp.*, 208 WL 450447 at *6 (Bankr. D. Ariz.

21  Feb. 15, 2008).  The Plan Proponent has discriminated unfairly in the treatment of unsecured

22  creditors because they are receiving treatment that ignores their individual claims against the

23  individual debtors and improperly substantively consolidates the Property Debtors' estates with the

24  Parent Debtor estate without any consideration for what claims the Property Debtors' estates may

25  have against the Parent Debtor estates.  Instead, they are forced to have their claims treated

26  similarly without regard to the strength of the individual Debtor estates.

27         Mechanic's Lien Claimants have a unique constitutionally protected status in California.

28  Here, the Plan Proponent has unfairly discriminated in the treatment of holders of mechanic's lien

1  claims by providing for a material alteration of their rights in contravention of the mechanic's lien

2  protections set forth in the California Constitution at Article 14, section 3.

3       It is well-grounded that the recording of a mechanic's lien relates back to the date the work

4  first began on the project. *McCrae v. Craig* (1863) 23 C. 522. Indeed, pursuant to California

5  Code of Civil Procedure § 3134, a later recorded mechanic's lien has priority over an earlier

6  recorded deed of trust where work on the project started before the deed of trust was recorded

7  since perfection of the mechanic's lien by recordation relates back to the date of commencement of

8  the work of improvement. *See also, Westfour Corporation v. California First Bank,*

9  3 Cal.App.4th 1610, 5 Cal.Rptr.2d 394 (1992).

10      Here, the Plan ignores the senior priority protected status of Mechanic's Lien Claimants.

11  The Plan provides for the sale of the Property to the 1st Lien Lenders, and further provides that

12  Mechanic's Lien Claimants will retain their lien rights.[12]  However, in effect, the rights of

13  Mechanic's Lien Claimants will be materially altered because they will be stayed from pursuing

14  their Mechanic's Lien Claims due to a stay operating in LCPI's bankruptcy. The Plan appears to

15  vest standing solely in the Liquidating Trustee, LCPI and Fidelity to have Mechanic's Lien

16  Claimants' rights determined pursuant to the Plan; thereby depriving the Mechanic's Lien

17  Claimants of the right to affirmatively enforce their lien rights.[13]  Moreover, there is no deadline

18  by which the Liquidating Trustee, LCPI or Fidelity would have to commence such proceedings.

19  Under the Plan, Mechanic's Lien Claimants could be left in an indefinite purgatory where they can

20  neither affirmatively enforce their lien rights, nor is there any requirement that the parties with

21  standing under the Plan will seek to determine whether or not the Mechanic's Lien Claimants, or

22  any of them, are "Senior Liens."

23      Such material modification of Mechanic's Lien Claimants state law rights is improper and

24  beyond the purview of the federal bankruptcy laws and the Bankruptcy Court. *See, e.g., In re*

25  *Hoffman,* 52 B.R. 212 at 216-17 (Bankr. D.ND. 1985) ("[T]he disruption of interests in property

26  _____

27      [12] See the Plan at page 16, lines 16-21.

     [13] See the Plan at page 39, lines 9-28.

28

1  caused by bankruptcy cases must be minimal or non-existent. 'It is equally well-settled... that state

2  laws are suspended only to the extent of actual conflict with the bankruptcy system provided by

3  Congress, so that in the absence of any conflict between the state and bankruptcy laws, the law of

4  the state where the property is situated governs questions of property rights....' [citation omitted]....

5  This Court cannot confirm through cram-down a reorganization plan over the objection of a

6  creditor whose interests are substantially altered by provisions of the proposed plan of

7  reorganization."). Since the Plan impermissibly alters the rights of holders of Mechanic's Lien

8  Claimants, it is unconfirmable.

9          D.      The Plan Is Not Feasible

10         Section 1129 of the Bankruptcy Code provides that the Court may not confirm the Plan if

11  the proponent fails to prove that the Plan is feasible.  In this way, section 1129(a)(11) provides, in

12  pertinent part, that a court may confirm a plan only if:

13                 Confirmation of the plan is not likely to be followed by liquidation,
                   or the need for further reorganization of the debtor or any successor
14                 to the debtor under the plan, unless such liquidation or
                   reorganization is proposed in the plan.
15

16  11 U.S.C. § 1129(a)(11).  The Plan proponent is required to present "ample evidence to

17  demonstrate that the Plan has a reasonable probability of success." *In re Acequia, Inc.*, 787 F.2d

18  1352, 1364 (9th Cir. 1986).  Section 1129(a)(11) requires a plan proponent to show "concrete

19  evidence" of sufficient cash flow to fund and maintain both its operations and obligations under a

20  plan. *See S&P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. Ind. 1995), *aff'd*, 78 F.3d 587 (7th Cir.

21  1996).  Even where the Plan is a liquidating plan, the Court should require the Plan Proponent to

22  demonstrate that it can maintain its operations and obligations under a plan.

23         Here, the Trustee has identified "three potential sources of Cash:  (1) any remaining Cash

24  set aside for the administration of the Debtors' cases and other purposes; (2) the Estates' share of

25  any proceeds from the sale or other disposition of the Properties; and (3) and net recoveries from

26  / / /

27  / / /

28  / / /

1  any Avoidance Actions or other Causes of Action asserted by the Estates against third parties."[14]

2  While this is a liquidating plan, it bears noting that none of the identified sources of cash have any

3  level of certainty associated with them.

4      The first source of cash is the $3.5 million retained by the Trustee for payment of

5  administrative expenses pursuant to its agreement with LCPI.  The Trustee has already submitted

6  requests for in excess of $3 million in administrative expenses and has identified that additional

7  funds will likely be expended in the ongoing administration of these cases.  Thus, it is unlikely

8  that there will be any additional funds available from this source to fund the ongoing plan

9  expenses.

10     The second source of cash is the "Estates' share of any proceeds from the sale or other

11  disposition of the Properties."[15]  Presumably, the Trustee is referring to the Trustee's

12  Participation.[16]  "Payment of the Trustee's Participation from Proceeds from the sale of Properties

13  to one or more Winning Bidders other than the 1st Lien Lenders under the Plan shall only be made

14  at such time when all Senior Liens have been resolved or Fidelity has accepted responsibility for

15  all remaining Senior Liens."[17]  It is unclear whether or not the Trustee will ever receive the

16  Trustee's Participation, as the terms of the Plan are illusory.  The Trustee's attempts to explain how

17  this "mechanism" will work demonstrate the illusory nature of the Trustee's Participation:

18          For the avoidance of doubt, in the case of such property actually
            received that consists of promissory notes, equity interests (direct or
19          indirect) in any entities taking title to the Properties and/or other
            deferred or contingent payment arrangements or mechanisms are
20          received or implemented by the 1st Lien Lenders or their applicable
            affiliates or principals, a profits participation or similar contractual
21          right to receive the Trustee's Participation from all Cash actually
            received by such entities taking title to each Property from the
22          disposition of such Property and by the Lien Lenders and their
            applicable affiliates and principals in respect of such promissory

23

24      [14] See the Plan at page 2, lines 23-28.

25      [15] See the Plan at page 2, lines 23-28.

26      [16] The Plan defines the Trustee's Participation as the Estates' right and entitlement to receive from the Proceeds of
        the dispositions of the Properties the lesser of (1) the amount sufficient to pay in full the Allowed Unsecured Trade
27      Claims to the extent not previously paid, and (2) 3.5% of such Proceeds.  See the Plan at page 65, liens 18-21.

        [17] See the Plan at page 12, lines 1-6.

28

1    notes, which profits participation or similar right shall be provided
for in the operating, partnership, or similar governing documents of
2    such entities and in such promissory notes or other deferred or
contingent payment documentation (as the case may be), in a form
3    and substance reasonably acceptable to the Liquidating Trustee with
the Liquidating Trustee being a direct contracted beneficiary of such
4    provisions with the legal right to contractually enforce same.[18]

5    There is virtually no doubt that the Trustee's Participation is little more than a sham, which is

6    unlikely to ever be converted to any meaningful cash distribution to creditors within a reasonable

7    period of time.  Moreover, even assuming the Trustee's Participation was paid immediately on a

8    sale of the Properties for $45 million, then the Trustee's Participation would provide $1,575,000 to

9    be paid on account of an estimated $420 million in claims.  The Trustee's Participation would

10   further be split 50/50 with LCPI, so that only $787,500 would be available to pay unsecured trade

11   claims of $60 million – essentially a penny on the dollar.  For example, a claimant with a

12   $450,000 claim would receive $5,906.25 on account of its claim, assuming that the Trustee uses

13   none of the Trustee's Participation to pay administrative expenses reserves.[19]

14        Finally, "the primary potential source of repayment for Unsecured Trade Creditors will be

15   any net proceeds from litigation."[20]  While the Trustee says very little about this third source of

16   recovery for creditors, it is fair to say that it is the riskiest of the three.  In the Disclosure

17   Statement, the Trustee states that he has filed a complaint in the United States District Court for

18   the Central District of California, Southern Division, against Lehman Lakeside and the SunCal

19   Parties (collectively the "Defendants") (but not SC Management) seeking to "avoid and recover a

20   $144 million dollar dividend" paid to the Defendants as either a fraudulent transfer or an unlawful

21   distribution, and will recover damages for breach of fiduciary duty (the "Dividend Action").[21]

22   / / /

23

24   [18] See the Plan at page 12, lines 16-25 and page 13, lines 1-7.

25   [19] Under the Plan, the Liquidating Trustee has reserved the right to alter the payment of Distributions, if any,
under the Plan, as he is "authorized to reserve funds from the Liquidating Trust as reasonable to pay the expenses and
fees of the Liquidating Trustee and the Liquidating Trustee Professionals before making any Distributions under the
26   Plan."  See the Plan at page 29, lines 24-27.

27   [20] See the Plan at page 3, lines 2-3.

     [21] See the Disclosure Statement at page 31, lines 14 and 15.

28

1    While the Trustee describes the Dividend Action as having merit, which "could result in a

2  substantial recovery for the Estates,"[22] he further advises that Lehman Lakeside denies that the

3  Dividend Action has any merit and that it will vigorously defend itself from the Dividend Action.

4  The targeted SunCal Parties will likewise vigorously defend themselves from what they know is a

5  meritless claim.  Even assuming that the Trustee can prevail, which is doubtful, the Trustee has

6  already pledged in excess of 40% of any potential recovery to the Trustee's contingency fee

7  counsel, Orrick, Herrington & Sutcliffe.  Thus, after payment of counsel the most the Estates

8  could recover would be $86,400,000, assuming an unlikely success and actual collection.  But

9  such recovery, even if feasible, would be further eroded by the Trustee's release of LCPI, the

10  architect of the conduct that resulted in the payment of dividends to Lehman Lakeside and the

11  SunCal Parties.

12    Under California law, Lehman Lakeside and the SunCal Parties are entitled to a credit on

13  any judgment against them equal to the value of the release provided to LCPI.  The alleged

14  fraudulent conveyance claims against Lehman Lakeside and the SunCal Parties involves dividends

15  that were  implemented and controlled by LCPI, who received a $10.6 million fee and directed

16  distribution of the funds primarily to LCPI affiliates.[23]  The compromise releases LCPI, the

17  architect of the alleged transfer who directed the funding to its affiliates (thus stifling the Trustee's

18  promised litigation).  LCPI nonetheless is to receive 50% of any recovery (thus reducing further

19  the hypothetical maximum recovery by the Trustee by 50%) from the other alleged participants in

20  the fraudulent conveyance.  Given the extent of LCPI's participation in the alleged fraudulent

21  conveyance and the fact that its released affiliates were the chief instigators of any alleged breach

22  of fiduciary duty and aiding and abetting arguments supporting the Dividend Action, the

23  settlement with LCPI will necessarily impact the Trustee's ability to recover anything from non-

24  settling defendants in connection with the dividend recapitalization or the avoidance actions filed

25  / / /

26

---

27  [22]  See the Plan at page 2, lines 23-28.

    [23]  See Trustee's Complaint at page 6, ¶17, attached as Exhibit "2."

28

1  against Grammercy and Square Mile, each of which actions prominently feature the conduct of

2  LCPI.

3      While the Trustee failed to consider the impact of a settlement with LCPI on the Estates'

4  recoveries against alleged joint tortfeasors, the Ninth Circuit has recently addressed a similar

5  circumstance.  There, the Ninth Circuit allowed a defendant in an adversary proceeding to receive

6  a dollar for dollar credit of the amount that his co-defendants paid to settle their claims pursuant to

7  California Civil Procedure Code § 877.  *In re JTS Corp.*, 617 F.3d 1102, 1116 (9th Cir. 2010).

8  The *JTS* case recognized that § 877 applied "where a covenant not to sue is given in good faith

9  before a judgment 'to one or more of a number of tortfeasors claimed to be liable for the same tort

10  ... it shall reduce the claims against the others in the amount stipulated by ... the covenant, or in the

11  amount of consideration paid for it whichever is greater.'" *JTS, supra*, at 1116, *citing Wakefield v.*

12  *Bohlin,* 145 Cal.App.4th 963, 979, 52 Cal.Rptr.3d 400 (2006), *overruled on other grounds by*

13  *Goodman v. Lozano,* 47 Cal.4th 1327, 1334, 104 Cal.Rptr.3d 219, 223 P.3d 77 (2010); *May v.*

14  *Miller,* 228 Cal.App.3d 404, 407, 278 Cal.Rptr. 341 (1991).   It is anticipated that the targets of the

15  Trustee's avoidance claims will similarly seek to establish their rights to reduce the claims against

16  each of them by the amount attributable to LCPI's settlement with the Trustee.

17      California has a long standing principle that there must be "equitable sharing of costs

18  among the parties at fault." *Tech-Built, Inc. v. Woodward-Clyde & Assoc.,* 38 Cal. 3d 488, 494.

19  (1985).  California Code of Civil Procedure section 877 provides, in pertinent part, that

20      "[w]here a release…is given …to one or more tortfeasors claimed to
       be liable for the same tort . . .it shall have the following effect: (a) it
21      shall not discharge any other such party from liability unless its
       terms so provide, but it shall reduce the claims against the others in
22      the amount stipulated by the release or in the amount of the
       consideration paid for it whichever is greater" …(b) it shall not
23      discharge the party to whom it is given from all liability for any
       contribution to any other party."  Because of the substantive
24      impairment of a parties rights, that party is entitled to a
       determination as to whether the release is being entered into in
25      "good faith."  See California Code of Civil Procedure section
       877.6(a)(1).

26

27  / / /

28  / / /

1  In finding that a settlement is in "good faith," California courts have stated that the settlement

2  "must be within 'the reasonable range' of the settling tortfeasors share of liability for the plaintiff's

3  injuries." *Gackstetter v. Frawley,* 135 Cal.App. 4th 1257, 1271 (2006).

4      Thus, if it is ever determined that the dividend payment should not have been made and if

5  due credit is given to the settlement approved by this Court with LCPI, who directed payment of

6  the dividend, then it is unlikely that any significant recovery will remain for the creditors of these

7  Estates. Finally, the foregoing scenario assumes a success that SunCal believes is unlikely, as it

8  ignores that the creditors of the Parent Debtor were specifically advised that the Dividend would

9  be paid, and had no objection to it. It further requires an assessment of the actions of SunCal and

10 Lehman Lakeside based on market conditions that existed at the time the Dividend was paid, for

11 which there is evidence that the value of the Properties was far in excess of the Dividends paid to

12 SunCal and Lehman Lakeside. Thus, it is unclear that there is any benefit to be derived from the

13 ongoing administration of these Estates through a liquidating trust.

14      The more appropriate mechanism would be a liquidation under chapter 7, which would

15 divest LCPI of its overwhelming deficiency claim and provide for a Court supervised

16 administration of these bankruptcy estates.

17      E.    The Plan Inappropriately Limits Liability In Excess Of The Safe Harbor Provisions

18          Of Section 1125(e) Of The Bankruptcy Code.

19      The Plan seeks a limitation of liability well beyond that provided in the safe harbor

20 provisions of section 1125(e) of the Bankruptcy Code. That section provides that:

21          A person that solicits acceptance or rejection of a plan, in good faith
            and in compliance with the applicable provisions of this title, or that
22          participates, in good faith and in compliance with the applicable
            provisions of this title, in the offer, issuance, sale, or purchase of a
23          security, offered or sold under the plan, of the debtor, of an affiliate
            participating in a joint plan with the debtor, or of a newly organized
24          successor to the debtor under the plan, is not liable, on account of
            such solicitation or participation, for violation of any applicable law,
25          rule, or regulation governing solicitation of acceptance or rejection
            of a plan or the offer, issuance, sale, or purchase of securities.

26

27 11 U.S.C. § 1125(e).

28 / / /

1  Here, the Trustee seeks an exculpation and release far broader than the provisions of section

2  1125(e):

3      "LCPI, the 1st Lien Lenders, the Professionals, and any of their
        respective officers, directors, shareholders, employees, or agents, …
4      for any act taken or omission made in connection with or related to
        … the consummation of the Plan, or the administration of the Plan,
5      the Cases, or the property to be distributed under the Plan, to the
        fullest extent permitted by applicable statutes and case law… ."[24]
6

7  Rather than seeking protection for actions taken solely in connection with the solicitation of the

8  Plan, the Trustee seeks protection from all actions taken during the case, all actions taken in

9  connection with the Real Properties and all actions taken related to the consummation of the Plan.

10  No controlling Ninth Circuit authority supports such a broad extension of 11 U.S.C. §1125(e).

11  4.      CONCLUSION

12      The proposed Plan will provide little or no benefit to creditors other than LCPI, the Trustee

13  and the Professionals.  Accordingly, SC Management respectfully requests that the Court deny

14  confirmation of the Plan and convert these cases for administration under chapter 7.

15

16  DATED: February 18, 2011          Respectfully submitted,

17                                    RUS, MILIBAND & SMITH
18                                    A Professional Corporation

19

20                          By:   _____
21                                JOEL S. MILIBAND
                                  Attorneys for SunCal Management, LLC
22

23

24

25

26

27  _____
    [24]  See Disclosure Statement at page 79, lines 1-12.
28

### REQUEST FOR JUDICIAL NOTICE

SunCal Management, LLC ("SC Management"), unsecured creditor and administrative priority claimant of the Jointly Administered Debtors, hereby requests that the Court take Judicial Notice, pursuant to Rule 9017 of the Federal Rules of Bankruptcy Procedure and Rule 201 of the Federal Rules of Evidence, as each of the following documents constitutes matters which are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned:

1.       On January 7, 2011, Alfred H. Siegel, the Chapter 11 Trustee of the Jointly Administered Debtors ("Trustee") filed his First Amended Disclosure Statement Describing First Amended Chapter 11 Plan (Dated January 7, 2011) in the within action as Docket No. 604; and

2.       On January 7, 2011, the Trustee filed his First Amended Chapter 11 Plan (Dated January 7, 2011) in the within action as Docket No. 605.

DATED:  February 18, 2011

Respectfully submitted,

RUS, MILIBAND & SMITH
A Professional Corporation

By: _____
JOEL S. MILIBAND
Attorneys for Creditor,
SunCal Management, LLC

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Von Karman Towers, Seventh Floor, 2211 Michelson Drive, Irvine, California 92612

A true and correct copy of the foregoing document described as <u>OBJECTION OF SUNCAL MANAGEMENT, LLC, TO FIRST AMENDED CHAPTER 11 PLAN (DATED JANUARY 7, 2011)</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>February 18, 2011</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

- Joey R Abramson    jralaw1@pacbell.net
- Thomas Scott Belden    sbelden@kleinlaw.com, ecf@kleinlaw.com
- Jeffrey W Broker    jbroker@brokerlaw.biz
- Joseph P Buchman    jbuchman@bwslaw.com
- Kathleen A Cashman-Kramer    kcashman@psdslaw.com
- Cathrine M Castaldi    ccastaldi@rusmiliband.com

☒ Service Information continued on attached page.

**II.    <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>** (indicate method for each person or entity served): On <u>February 18, 2011</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service Information continued on attached page.

**III. <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u>** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on <u>February 18, 2011</u> I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

The Honorable Erithe A. Smith          <u>BY PERSONAL DELIVERY</u>
U.S. Bankruptcy Court
Ronald Reagan Federal Building
Bin outside of Room 5097
411 W. Fourth Street
Santa Ana, CA 92701-4593

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| <u>FEBRUARY 18, 2011</u> | ANNA M. HOYLE | |
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                            **F 9013-3.1**

ADDITIONAL SERVICE INFORMATION (if needed):

**SERVED BY COURT BY NEF (CONT.):**

- Tara Castro Narayanan    tara.narayanan@msrlegal.com
- Scott C Clarkson    sclarkson@lawcgm.com
- Geoffrey Crisp    geoffrey@smgarberlaw.com, michelle@smgarberlaw.com
- Jonathan S Dabbieri    dabbieri@sullivan.com,
  hill@sullivanhill.com;mcallister@sullivanhill.com;stein@sullivanhill.com;vidovich@sullivanhill.com
- Terrence T Egland    ecf@kleinlaw.com
- Lei Lei Wang Ekvall    lekvall@wgllp.com
- Marc C Forsythe    kmurphy@goeforlaw.com
- Heather Fowler    heather.fowler@lw.com, colleen.rico@lw.com
- Steven M Garber    steve@smgarberlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Marshall F Goldberg    mgoldberg@glassgoldberg.com
- Kelly C Griffith    bkemail@harrisbeach.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Gil Hopenstand    gh@lnbrb.com
- Christopher W Keegan    ckeegan@kirkland.com, gdupre@kirkland.com;alevin@kirkland.com
- Yale K Kim    ykim@allenmatkins.com
- Kerri A Lyman    klyman@irell.com
- John T Madden    jmadden@wgllp.com
- Eve A Marsella    emarsella@lawcgm.com
- Robert S Marticello    Rmarticello@wgllp.com
- Robert C Martinez    rmartinez@mclex.com
- Hutchison B Meltzer    hmeltzer@wgllp.com
- Joel S. Miliband    jmiliband@rusmiliband.com
- James M Miller    jmiller@millerbarondess.com
- Ramon Naguiat    rnaguiat@skadden.com
- Samuel A Newman    snewman@gibsondunn.com
- Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
- Craig M Rankin - DECEASED -    cmr@lnbrb.com
- Daniel H Reiss    dhr@lnbrb.com
- Todd C. Ringstad    becky@ringstadlaw.com
- Martha E Romero    Romero@mromerolawfirm.com
- Ronald Rus    rrus@rusmiliband.com
- Mark C Schnitzer    mschnitzer@rhlaw.com
- Alfred H Siegel    ahstrustee@horwathcal.com, asiegel@ecf.epiqsystems.com
- Gerald N Sims    jerrys@psdslaw.com, bonniec@psdslaw.com
- Evan D Smiley    esmiley@wgllp.com
- Autumn D Spaeth    aspaeth@wgllp.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- Andrew Troop    andrew.troop@cwt.com, scott.griffin@cwt.com;jill.kaylor@cwt.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael D Warner    echou@warnerstevens.com
- David R Zaro    dzaro@allenmatkins.com

**SERVED BY EMAIL:**

Robert S. Martincello – rmarticello@wgllp.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9013-3.1**

**SERVED BY REGULAR U.S. MAIL:**

Brett T Abbott
Gubler, Koch & Degn LLP
1110 N Chinowth St
Visalia, CA 93291

Sean M Boyle
King & Spalding LLP
333 Twin Dolphin Dr Ste 400
Redwood Shores, CA 94065

Scott Davidson
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Terrence T Egland
4550 California Ave 2nd Fl
Bakersfield, CA 93309

Gary E Gans
865 So Figueroa St 10th Fl
Los Angeles, CA 90017-2543

David M Gardner
Young Wooldridge LLP
1800 30th St 4th Fl
Bakersfield, CA 93301

Genesis Golf Builders, Inc
c/o Joe R. Abramson, Esq.
Abramson & Brown
21700 Oxnard Street, Ste. 430
Woodland Hills, CA 91367

David M Grable
QUINN EMANUEL URQUHART OLIVER & HEDGES L
865 S Figueroa St 10th Fl
Los Angeles, CA 90017

Mark E McKane
Kirkland & Ellis LLP
555 California St
San Francisco, CA 94104

Christopher R Mordy
Peterson & Price, APC
655 W Broadway Ste 1600
San Diego, CA 92101

Gerald W Mouzis
The Mouzis Law Firm APC
13681 Newport Ave Ste 8-605
Tustin, CA 92780

Howard S Nevins
Hefner Stark & Marois
2150 River Plaza Dr Ste 450
Sacramento, CA 95833

Orrick, Herrington & Sutcliffe LLP
777 S. Figueroa St. Suite 3200
Los Angeles, CA 90017

Arthur J Steinberg
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

Alan Wilken
Loeb & Loeb LLP
10100 Santa Monica Blvd Ste 2200
Los Angeles, CA 90067-4120

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**